## CLAYTON *vs.* BROWN.

1. Answers of one of the parties to interrogatories sued out under the Acts of 1847 and 1850, to compel discovery at law, are not evidence for such party, unless in response to questions asked.

2. Evidence that is relevant cannot be kept from the jury by a waiver of proof on that point or admission of the fact, if the party desires to have the testimony out.

3. In a question of *bona fides* as to a settlement on wife and children by a debtor, proof of debts existing and outstanding against him at the time of the settlement is proper evidence, and a transcript from the record, of a mortgage, is competent for that purpose.

4. A settlement in favor of wife and children, or either, will be supported, if made in good faith and with no intent to defraud creditors; but one by debtor in greatly embarrassed circumstances, of the bulk of

Clayton *vs.* Brown.

his estate, leaving but a pittance, and insufficient for the debts, can-not be supported.

5. A verdict of the jury, supported by the evidence and law, will not be set aside, especially when no error of the Court is complained of.

Trover, etc., in Muscogee Superior Court. Tried before Judge WORRILL, May Term, 1859.

This was an action for a negro man, Charley, brought by Dempsey Brown against Philip A. Clayton. For a portion of the facts, see 17 *Ga. Rep.*, 217, the case having before been to the Supreme Court.

At the last trial in the Court below, the jury found a second time for the plaintiff; and counsel for defendant moved for a new trial on the following grounds:

1st. Because the Court erred in rejecting the portion of the answer of Clayton which went to prove the value of the negro.

2d. Because the Court erred in admitting in evidence all that portion of the testimony of the witness, Hart, in two sets of interrogatories, which went to show the manner in which the negro went into the possession of Clayton, and what took place on the trip to Selma, Alabama, defendant's counsel admitting at the same time the conversion of the negro without proof.

3d. Because the Court erred in admitting in evidence, for the purpose of proving the indebtedness of Reeves, the transscript of the record from Bibb Inferior Court, going to show the indebtedness of Reeves, on a mortgage, to Clayton.

4th. Because the verdict of the jury was without evidence and greatly against the weight of evidence.

It was proven that on the 22d day of November, 1837, James T. Reeves, by virtue of a marriage settlement, conveyed to Philip A. Clayton sixteen negroes, consisting mostly of men and women, to hold, in trust, for the sole and separate use of Amelia E. Reeves, his wife, "during her natural life and such children as may be the issue of the present marriage." Among the negroes thus conveyed was a boy sixteen years old, named Charles.

On the 15th day of November, 1841, in the Inferior Court of Bibb county, William Holmes recovered a judgment against said James T. Reeves, for the sum of $134 00, with interest

Clayton *vs.* Brown.

and cost of suit, from which a writ of *fi. fa.* was issued, and on the 15th day of May, 1845, was levied by William Hampton, Sheriff of Houston county, on the boy Charles, as the property of the said Reeves. On the 6th day of January, 1846, the boy was sold at sheriff's sale and the plaintiff, Dempsey Brown, purchased him at the price of $512 00. In April, 1847, the defendant, Clayton, as trustee for Mrs. Reeves, obtained possession of the boy, and shortly thereafter, Brown brought his action of trover as above for said slave.

Pending the action, the plaintiff, Brown, propounded certain interrogatories, under the Act af 1847, to Clayton, to show who he had hired the negro to since he had had possession of him, the amount of hire he had received, etc. After answering plaintiff's questions, Clayton then went on and stated how much he thought the negro was worth, there being no question to authorize the answer. This answer was objected to, and the objection was sustained by the Court, as above appears.

To prove the conversion of the slave, plaintiff offered the answers to interrogatories of Crawford Hart, who stated that Brown placed the negro Charles in his possession to sell, and that he and the negro were traveling in a Jersey-wagon; that Clayton, in company with one Reeves, overtook them near Selma, in Alabama; that Clayton demanded the negro; witness proposed to take the negro back to Columbus and confine him in jail until Clayton's claims could be investigated; thereupon, they started back to Columbus, and as they were going along, Clayton asked witness to let him ride in the wagon, and to let the negro ride on Clayton's horse; witness consented; they stopped for some cause, when Clayton got out of the wagon, jumped on the horse of Reeves, and he and the negro ran off.

This part of the witness' answer was objected to by Clayton's counsel, who said they would admit the conversion. The objection was overruled, and defendant excepted.

To show indebtedness on the part of Reeves at the time he settled the negro on his wife, the plaintiff offered to read to the jury a certified copy of proceedings had in Bibb Inferior Court on the part of Clayton, against Reeves, to establish a lost mortgage, note, etc., the mortgage being dated September 4, 1857, to secure the payment of $350 00; also, the foreclosure of said mortgage; and also, a transcript of other pro-

ceedings in said Court on the part of Clayton, against Reeves, to establish the copy of the *fi. fa.* issued on the foreclosure of the mortgage; which transcript further showed that the copy *fi. fa.* so established was delivered to the Sheriff of Bibb county 18th May, 1838, and returned "no property," June 19th, 1838.

This evidence was objected to by defendant's counsel, and the objection overruled by the Court.

The evidence showed that at the time of the settlement, Reeves was considerably indebted. Holmes proved that he owed him $134 00, and that he was also indebted to various persons in Macon. The record from Bibb Inferior Court showed that he owed Clayton $350 00. Mrs. Reed proved that the girl Louisa was sold by the sheriff in 1839, and that she was worth $600 00. Clayton's mortgage *fi. fa.* in June, 1838, was returned, "no property." Asa Thompson proved that the boy Charles was sold in 1845 by the Sheriff of Houston county, under divers executions against Reeves. There was proof that Reeves owned about twenty negroes, a horse, buggy and piano; sixteen of which negroes were in the deed of settlement, and were valuable men and women, leaving him three or four negro children, the horse, buggy and piano, worth some $1,400 00.

The evidence in the case is voluminous, but the above statement of it is deemed sufficient to a proper understanding of the points decided.

The motion for a new trial was overruled by the Court on all the grounds taken, and defendant excepted.

INGRAM & RUSSELL; JONES & JONES, for plaintiff in error.

DOUGHERTY, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

Interrogatories were exhibited to the plaintiff in error by the defendant, under the Act to authorize and compel discoveries at common law, December 17, 1847, to compel him to discover to whom he had hired the negro, and the amounts he had received for the negro. Clayton, in his answers, stated what he considered the negro to be worth, and this

part of the answers the plaintiff refused to read as evidence, and when the defendant offered to read it as evidence, plaintiff objected, and the Court sustained the objection. This is the first ground of error complained of.

1. The Act of 1847 enacts that these interrogatories may be sued out when pertinent, "and such as the adverse party would be bound to answer upon a bill of discovery in a Court of Chancery," and that the answers to such interrogatories "shall be evidence at the trial of the cause, in the same manner and to the same purpose and extent, and upon the same condition, in all respects, as if the same had been procured upon a bill in Chancery for discovery, but no further or otherwise." An answer to a bill in Chancery, for discovery, is evidence for the defendant; so far as it is responsive to the call in the bill for discovery or connected necessarily with the responsive matter, or explanatory of it." *Eastman vs. McAlpin*, 1 *Kelly*, 170. The answer of Clayton to the interrogatories could only be evidence for him when responsive to the call, according to the rule stated. It was not responsive—connected with the response—nor explanatory of it. It was, therefore, not evidence, and was properly ruled out.

2. The evidence of witness, Hart, the objection to which forms the second ground of complaint, was properly admitted. It was relevant to the issue, showed a conversion of the negro by Clayton, and could not be excluded by any rule that we know of, simply because the opposite party was willing to admit a conversion. The plaintiff was not bound to take his admission. The fact that the evidence placed the defendant in an unfavorable light before the jury on the trial, does not alter the rule. To have avoided its consequences, he should not have been guilty of the wrong in the first place. Nothing can excuse one for a wrongful act or breach of faith, when the Courts are always open for his protection. Mr. Clayton was not ashamed to be guilty of both these to get the advantage of his adversary; yet, when the matter comes to be investigated, he insists on the advantage thus acquired, but thinks it a great hardship that his conduct should be exposed and his title put in jeopardy in consequence. We cannot help him out of the dilemma.

3. We were not able to see the force of the objection to the transcript of the record of the mortgage debt from Reeves to Clayton. The question before the jury was, whether the

Clayton *vs.* Brown.

deed from Reeves, under which Clayton claimed, was fraudulent against creditors? And for this purpose, the existence of debts against Reeves, at that time, was admissible. This was a debt against him at that time, and the transcript was proper evidence of it.

And this brings us to the only other point in the case, and that is, was the verdict without evidence, or so strongly and decidedly against the evidence as to require us to order a new trial?

˙ The evidence shows that Reeves, at the time of making this deed of settlement, was possessed of some twenty negroes, a horse and buggy, and a piano. He settles some sixteen of the negroes, all valuable men and women, on his wife and children, retaining out of the deed some four negroes, one of which was under mortgage at the time, and the three others were small children, and what became of them, the record does not show. Charles, the negro in controversy, was levied on and sold in 1845. One of the executions under which he was sold—and he was sold under divers—was on a debt that was in existence when the settlement was made. Reeves, at the time of the settlement, was otherwise indebted, and to various persons.

4. Now, it is settled that a father and a husband may make settlement on his wife and children, or on either, and the same will be protected against unexisting debts, provided it be a reasonable and fair one—one made in good faith, and not with an intent to defraud creditors. and the intent must govern. The settlement must not be of his whole estate and a valuable one, retaining but a pittance, and wholly insufficient to pay debts, as in this case. Such a settlement as this never was, and ought never to be, sustained against a creditor.

5. The intent to defraud creditors·is too plain. But the question was an open one for the jury. It was fairly submitted to them at least. There is no complaint as to the charge, and their verdict was against its *bona fides,* and that verdict, we think, was with the evidence, and it must stand.

Judgment affirmed.