## 35381. FRANKLIN v. THE STATE.

HILL, Justice.

This is a death case. On the morning of January 17, 1979, Sergeant Burnis Campbell and Deputy Kenny King of the Cobb County Sheriff's Department transported four Cobb County jail inmates, one of whom was Raymond Lee Franklin, to Dr. Daniel Busch's dental office for treatment. The inmates were secured together by means of a chain; each inmate had one wrist cuffed. Franklin was the second inmate sent into the dentist's treatment room; when he returned, Deputy King released another inmate and while Sergeant Campbell escorted that inmate to the treatment room, Franklin, who had not yet been secured by the chain, seized Deputy King's pistol. At Franklin's direction, the other two inmates seized Deputy King's key and released themselves, and then took King's and Campbell's wallets and Campbell's pistol. At one point, Franklin commented that he was in for life and had nothing to lose.

Franklin obtained Dr. Busch's car keys and forced Dr. Busch's assistant, Carol Heitmuller, to leave with him. Franklin, Ms. Heitmuller, and two of the other inmates

left the office together. When Franklin was unable to unlock Dr. Busch's car, he told Ms. Heitmuller they were going to run; he held Deputy King's gun with the barrel in her side and they proceeded across a parking area and up a hill into some woods. They emerged into a clearing where they saw a Mr. Dempsey. Franklin yelled at him that he wanted a car; when Dempsey responded that he did not have a car, they went on and arrived at the Collie house. The house had a screen door and a wooden door with glass panes. When Franklin knocked, Claude Collie opened the wooden door. Franklin demanded his car and Collie slammed the door. Franklin then fired, fatally wounding Collie.[1] Ms. Heitmuller ran to a neighbor's house.

Mrs. Collie was in the bedroom when she heard a shot. She returned to the living room where she saw her husband collapse after saying, "I've been shot." She heard a second shot and called out to her daughter Gladys. Gladys Collie came into the living room and saw her father lying on the floor; she looked outside, saw Franklin by her car near the porch and shouted that he had killed her father. Franklin returned to the house, pointed the gun at Gladys's head and cocked the hammer. Both mother and daughter ran into other rooms. Franklin found Mrs. Collie and, placing the gun to her head, asked for the car keys. She ran out of the house. Franklin then left on foot and hid during the day.

That evening, after unsuccessfully attempting to get into a car being driven by a woman outside a Wendy's restaurant, he was seen running down the Canton Highway by two customers at Wendy's. He was arrested shortly after 8 p.m. that night behind a shoe store. The pistol he had taken from Deputy King was found several feet from where he was captured. It had two spent shells. Ballistic comparisons showed it was the gun which killed

---

[1] After his arrest Franklin made a statement which was presented to the jury in which he said the gun "went off" when Collie slammed the door and then "went off" again. He said he did not mean to fire it; in fact, he said that when he heard the second shot he thought someone was shooting at him.

the victim. Franklin's confession corroborated the testimony of the several witnesses. Franklin was convicted of kidnapping and murder and sentenced to 20 years and to death, respectively. Viewing the evidence in the light most favorable to support the verdict, a rational trier of fact could have found the defendant guilty of these crimes beyond a reasonable doubt.

1. Franklin filed timely challenges to the composition of the grand jury in Cobb County and the petit jury in Bibb County, alleging that each was selected in violation of Code Ann. § 59-112.[2] After hearing evidence, the trial court ruled against him; in his first two enumerations of error he appeals those rulings. His complaint is founded not on the Consititution but on alleged violations of the statute.[3]

Code Ann. § 59-112 provides: "(a) The following persons are exempt from all jury duty, civil or criminal; the name of any such person shall not be included or continued in the jury box unless such person shall make a request therefor in writing to the board of jury commissioners or its clerk:

"1. Police and other law enforcement officers employed or appointed on a full-time basis, but not part-time or honorary peace officers.

"2. Officers and personnel of any court employed or appointed on a full-time basis, including attorneys at law...

"3. Officers, firemen and other personnel of any fire department employed or appointed on a full-time basis...

"4. Physicians, surgeons, medical interns, and medical technicians actively engaged as such...

---

[2] After his indictment by the Cobb County Grand Jury, Franklin moved for a change of venue. The state consented, and venue was changed to Bibb County.

[3] In Taylor v. Louisiana, 419 U. S. 522, 534 (95 SC 692, 42 LE2d 690) (1975), the court said: "The States are free to grant exemptions from jury service to individuals in case of special hardship or incapacity and to those engaged in particular occupations the uninterrupted performance of which is critical to the community's welfare. Rawlins v. Georgia, 201 U. S. 638... (1906)."

"5. Dentists and pharmacists, duly licensed, who are actively engaged in the practice of their profession.

"(b) Any other person who shows that he will be engaged during his term of required service in work necessary to the public health, safety, or good order, or that she is a housewife with children 14 years of age or younger may be excused by the judge of the court to which he has been summoned or *by some other person who has been duly appointed by order of the chief judge to excuse jurors.* Such a person may exercise such authority only after the establishment *by court order of guidelines governing such excuses.* Any such order of appointment shall provide that, except for permanently mentally or physically disabled persons, all excuses shall be deferred to a date and time certain within that term or the next succeeding term or shall be deferred as set forth in the court order. . .

"(d) Any teacher or principal of this State who does not desire to serve upon juries shall notify the jury commissioners of the county in which he or she resides in writing to that effect, and thereupon the jury commissioners shall not place the name of such teacher or principal in the jury box for said county.

"(e) Any person who is 65 years of age or older who does desire to serve upon juries shall notify the jury commissioners of the county in which such person resides in writing to that effect, and thereupon the jury commissioners shall place the name of such person in the jury box for said county." (Emphasis supplied.)

In support of his motion challenging the Cobb County Grand Jury, Franklin called as a witness the Clerk of the Superior Court of the Cobb Judicial Circuit, who also served as the clerk of the jury commissioners and as acting court administrator. He testified that the grand jury list was compiled by random selection from the 1977 list of registered voters. A computer selects 1,000 names (the "ready list") and prints a notice which is sent to each individual advising them that they will be receiving a summons for jury service within the next ninety days.[4]

---

[4] As summons are issued, the "ready list" is sup-

Along with the notice, each individual is sent instructions as to legal exemptions. When the individuals summoned communicate with the court administrator's office regarding exemptions, most speak with the court administrator's secretary, although some are excused by the court administrator or by a judge.[5] The court administrator and his secretary operate under oral orders of the judges issued in 1969 or 1970. Under these instructions, individuals were to be excused for statutory reasons or business hardship reasons; for example, the operator of a one person business would be excused. Apparently students and military personnel on active duty were also regularly excused. Individuals with other excuses were referred to a judge. Where possible, jurors are rescheduled instead of being permanently excused. No investigation of excuses transmitted by telephone is carried out.

In regard to the challenge to the array of petit jurors in Bibb County, the parties stipulated certain facts obtained from the Clerk of the Bibb Superior Court, and the stipulations were amplified by the testimony of the clerk. The evidence showed that every other voter on the most recently revised voters' list is sent a jury questionnaire on a computer card; the reverse of the card recites the statutory exemptions. When the voters send the cards back, the jury commissioners and the clerk of the court pass on claimed exemptions. Summons are then sent to those not exempted at that stage. Excuses transmitted by telephone are handled by the clerk or, on rare occasions, by the deputy clerk. The only non-statutory excuse mentioned in the evidence is the clerk's statement that individuals who had paid non-refundable deposits on vacations would be allowed to postpone jury duty. In reference to this and other non-permanent excuses, the clerk testified that the names of such individuals were

---

plemented by computer selection so it remains at 1,000.

[5] There was testimony that one juror allegedly was excused by the district attorney. By nothing said herein does this court approve such practice.

retained and the "call-backs" were in fact recalled for jury duty. The clerk also testified that he handled exemptions and excuses for a number of years under the former chief judge and that he did not recall receiving any specific instructions from him, but that it was his understanding that he could exercise some discretion in allowing temporary excuses, but only statutory excuses authorized permanent exemption. When the former chief judge retired, the clerk spoke with the current chief judge, who authorized him to continue in the same manner, subject to any modification the new chief judge might deem advisable.

Franklin argues that the practices outlined violate Code Ann. § 59-112, supra, because in neither county is there a *written* order establishing guidelines and appointing someone to implement them, and because non-statutory excuses are allowed. He also argues that the counties must investigate alleged exemptions and excuses to ascertain their validity.

The answer to these contentions is found in *Hulsey v. State,* 172 Ga. 797, 808 (159 SE 270) (1931), where the court said: "In *Rafe v. State,* 20 Ga. 60, it was said: 'The statutes for selecting jurors, drawing and summoning them, form no part of a system to procure an impartial jury to parties. They establish a mode of distributing jury duties among persons in the respective counties. . . they provide for rotation in jury service; they prescribe the qualifications of jurors, and the time and manner of summoning them, and are directory to those whose duty it is to select, draw, and summon persons for jurors.' This doctrine was referred to approvingly and applied in *Woolfolk v. State,* 85 Ga. 69 (5) (supra), in *Rawlings v. State,* 163 Ga. 406-419 (136 SE 448), and in *Pollard v. State,* 148 Ga. 447-453 (96 SE 997). In the last case it was said: 'It is. . .said that statutes regulating the selection, drawing, and sum-moning of jurors are intended to distribute jury duties among the citizens of the county, provide for rotation in jury service, and are merely directory. This is undoubtedly true. See *Rafe v. State,* 20 Ga. 60. Obviously, however, a disregard of the essential and substantial provisions of the statute will have the effect of vitiating the array. In the *Rafe* case, supra, it was ruled that such statutes, that is,

statutes regulating the selection, drawing, and summoning of jurors, "are no part of a regulation to secure to parties impartial juries." ' " Accord, ABA Standards, Trial by Jury, §§ 2.1, 2.3. We do not find here such disregard of the essential and substantial provisions of the statute as would vitiate the arrays. Although *Hulsey v. State,* supra, dealt with somewhat different Code sections, the principal stated there is applicable here. The case relied upon by Franklin involved the integrity of the jury selection process, not (as here) the incidental procedures.

Franklin also argues that the county's practice of excusing some jurors who are not entitled to be excused by Code Ann. § 59-112 (b) violates the statute. There is no evidence that such exemptions or deferrals were allowed in such a manner as to alter, deliberately or inadvertently, the representative nature of the lists.[6] We decline to hold, as Franklin suggests, that any excuse which does not comply with Code Ann. § 59-112 vitiates the array. "That the excuses accepted for delaying service may not have been authorized or enumerated in the Code, is not important." *Jones v. State,* 137 Ga. App. 612, 614 (224 SE2d 473) (1976). "A party to a lawsuit has no vested interest in having any particular juror to serve; he is entitled only to a legal and impartial jury." *Grasham v. Southern R. Co.,* 111 Ga. App. 158, 161 (141 SE2d 189) (1965). We find no ground for reversal in these enumerations.

2. In Franklin's third enumeration of error, he complains that the trial court erred in failing to exclude a venireman for bias and prejudice. It should be recalled that this criminal episode began when Franklin escaped from custody while at a dentist's office. During voir dire, Franklin's attorney asked several jurors if they would be prejudiced against the defendant because the evidence would show he had been in custody on other charges. They answered in the negative. When Charles Pritchett was called and asked if he had any bias or prejudice for or against the defendant he answered, "Yes, sir. I have some prejudice since I have heard his attorney say he had been

---

[6] Cf. *Barrow v. State,* 239 Ga. 162 (4) (236 SE2d 257) (1977).

in jail in Cobb County." Pritchett repeatedly stated that he did not think he would be able to put that information entirely out of his mind. The trial court overruled Franklin's motion to strike the prospective juror for cause. Franklin used a peremptory challenge to remove him, and exhausted his 20 peremptory challenges before the last juror was chosen.

We find no error. The fact that Franklin had been in custody in Cobb County, which the prospective juror stated he could not "put out of his mind," was introduced at the voir dire by Franklin's attorney and was, in this case, admissible evidence. Pritchett candidly admitted this evidence would tend to influence him; presumably all evidence influences the jurors to some degree. We find no reversible error by the trial court in refusing to strike Pritchett for cause under the circumstances of this case. *Patterson v. State,* 239 Ga. 409 (1) (238 SE2d 2) (1977); *Welch v. State,* 237 Ga. 665 (5) (229 SE2d 390) (1976).

3. Franklin's fourth enumeration is that the trial court erred in allowing repetitive photographs of the victim into evidence when the cause of his death was not in doubt. The state introduced six photographs of the victim; five depicted his body as it lay after the shooting; the sixth was taken when the body of the victim, still fully dressed, had been laid flat. The photographs showed that the victim of the shooting had had his pockets emptied. This fact was corroborated by the defendant's statement. The photographs are accurate and correct representations of material facts and the trial court did not err in allowing them into evidence. *Bowden v. State,* 239 Ga. 821 (2) (238 SE2d 905) (1977); *White v. State,* 242 Ga. 21 (3) (247 SE2d 759) (1978); see footnote 1 in *Florence v. State,* 243 Ga. 738 (4) (256 SE2d 467) (1979).

4. Franklin's fifth enumeration is that the trial court erred in allowing his confession into evidence when the state failed to show that at the time the confession was given, the appellant was not intoxicated on drugs. Evidence heard by the court pursuant to Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), showed that before Franklin made the challenged statement, at approximately 9:30 on the night of January 17, 1979, he was read all his rights, that two attorneys who

were at that time representing him were present, and that he appeared coherent and did not appear to be under the influence of drugs. When asked if he was under the influence of drugs, he stated that before going to the dentist he had taken five pills he had procured earlier but that he was not under the influence of them so as not to know what was going on. The trial court's admission of the defendant's statement was not error. *Gates v. State*, 244 Ga. 587 (1979); *Hurt v. State*, 239 Ga. 665 (2) (238 SE2d 542) (1977); *High v. State*, 233 Ga. 153 (1) (210 SE2d 673) (1974); *Johnson v. State*, 233 Ga. 58 (209 SE2d 629) (1974).

5. Franklin's sixth enumeration is that the trial court erred in ruling that the notice of prior convictions to be used by the state in the sentence phase was timely and sufficient. Trial began Monday, April 23, 1979. The state delivered a letter to Franklin's counsel on the afternoon of Friday, April 20, 1979, which read in relevant part: "[W]e will be using prior convictions against Raymond Franklin in the sentencing phase. These are a plea of guilty in 1974 in Fulton County for criminal attempt to commit robbery, case A-24286, and a plea of guilty in Douglas County for burglary in July 1977, case CR 77-849. We will serve you with formal notice Monday morning." On Monday morning the state introduced into the record formal written notice of its intention to use these convictions, and a certified copy of each.

Franklin's argument that the notice received April 20 was unclear is without merit. *Bowden v. Zant*, 244 Ga. 260 (1979); *Potts v. State*, 241 Ga. 67 (14) (243 SE2d 510) (1978); *Gates v. State*, 229 Ga. 796 (4) (194 SE2d 412) (1972). Likewise, we cannot agree that the notice was untimely. The statute requires that it be provided "prior to his trial," Code Ann. § 27-2503, and it in fact was. *Corbett v. State*, 233 Ga. 756 (213 SE2d 652) (1975). "The purpose of Code Ann. § 27-2503 (a) is to allow a defendant to examine his record to determine if the convictions are in fact his, if he was represented by counsel, and any other defect which would render such documents inadmissible during the pre-sentencing phase of the trial." *Herring v. State*, 238 Ga. 288, 290 (232 SE2d 826) (1977). Even now, Franklin does not contend that the convictions were not his, that he was not represented by counsel, or that the convictions

were inadmissible for any other reason.[7] In view of the fact that the statute's literal terms were complied with and its purposes satisfied, we find no merit in this enumeration of error.

6. Franklin's seventh enumeration of error is that the trial court erred in admitting during the sentencing phase evidence of alleged prior armed robberies and aggravated assault, details of which were far in excess of what was necessary to show confinement, and which prejudiced the defendant. He argues that, because he stipulated "lawful custody," the trial court should have sustained his objection to a detective's testimony which outlined the incidents for which he had been arrested. The state argues that a showing that the defendant was in "lawful custody" was relevant and material because the state was relying on Code Ann. § 27-2534.1 (9) as an aggravating circumstance: i.e., that "the offense of murder was committed by a person in, or who has escaped from, the lawful custody of a peace officer or place of lawful confinement." Because Franklin was awaiting trial when he escaped, he had not been convicted of the offenses under which he was being held. The trial court accordingly gave limiting instructions, explaining that the evidence could only be considered on the question of lawful custody.

The trial court did not err in admitting the testimony. Relevant evidence cannot be kept from the jury by an admission of the fact or waiver of the requirement of proof. *Clayton v. Brown,* 30 Ga. 490 (2) (1860).[8]

---

[7] The Sixth Amendment right to counsel in state criminal cases was established in Gideon v. Wainwright, 372 U. S. 335 (83 SC 792, 9 LE2d 799) (1963). Presumably counsel has been provided, or expressly waived, in all state criminal cases, where required, decided since that date. As more and more time passes, the chances that a defendant was not represented by counsel become less and less.

[8] Franklin also argues that even if the detective's testimony was admissible, the prosecutor used the details of these prior arrests in his closing argument not just to show custody but to inflame the jury. The portions of the

7. Franklin's eighth enumeration is that the trial court erred in failing to allow his evidence in mitigation of the sentence which was relevant to the nature of capital punishment and its application in this case. Franklin offered the testimony of three witnesses — a reporter, a prison chaplain and a professor of religion; they were among those who testified without objection in *Davis v. State,* 241 Ga. 376, 387 (247 SE2d 45) (1978). In this case, the state did object and the court listened to their testimony outside the presence of the jury before ruling it inadmissible. The tendered testimony contained, inter alia, descriptions of executions and of life on death row, statistics relating to executions, and religious and philosophical approaches to the death penalty. The court found that the evidence was not admissible because the "evidence of extenuating or mitigating circumstances" allowed by Code Ann. § 27-2534.1(b) and Code Ann. § 27-2503 relates to evidence about the particular defendant and does not include evidence involving the death penalty in general. We agree.

In approving Georgia's capital-sentencing procedures, the U. S. Supreme Court in Gregg v. Georgia, 428 U. S. 153, 197 (96 SC 2909, 49 LE2d 859) (1976), recognized that in the sentencing phase, "the jury's attention is directed to the specific circumstances of the crime: Was it committed in the course of another capital felony? Was it committed for money? Was it committed upon a peace officer or judicial officer? Was it committed in a particularly heinous way or in a manner that endangered the lives of many persons? In addition, the jury's attention is focused on the characteristics of the person who committed the crime: Does he have a record of prior convictions for capital offenses? Are there any special facts about this defendant that mitigate against

closing argument cited, however, are primarily based on testimony elicited during cross examination of Franklin, as must have been clear at the time because no objection or motion was made that the prosecutor's argument used the evidence for a purpose not allowed by the trial judge's limiting instructions.

imposing capital punishment (e.g., his youth, the extent of his cooperation with the police, his emotional state at the time of the crime)." The court also noted that the drafters of the Model Penal Code have proposed a list of mitigating circumstances; all relate directly to the individual defendant and the crime at issue. Id., 428 U. S. at 193-194, n. 44.

In Lockett v. Ohio, 438 U. S. 586 (98 SC 2954, 57 LE2d 973) (1978), the U. S. Supreme Court found that Ohio's three mitigating circumstances were too restrictive to be constitutional. There the court said (438 U. S. at 604): ". . . [W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Conversely, the court stated in a footnote (438 U. S. at 604, fn. 12): "Nothing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense."

In the case before us the excluded testimony did not relate to the defendant's character, his prior record, or the circumstances of his offense. In excluding the testimony of these three witnesses, the trial court remarked that he thought the testimony addressed itself to the state legislature. We concur. Such testimony would be pertinent to the issue of the constitutionality of the death penalty. It is not, however, admissible in the sentencing phase as evidence in mitigation.[9]

8. Franklin's ninth enumeration is that the trial court erred in its charge to the jury on the rebuttable presumption of intent and on accident. The charge complained of reads in relevant part:

"A crime is a violation of a statute of this State in

---

[9] If the rule were otherwise, presumably the state could introduce general evidence in support of the imposition of the death penalty.

which there shall be a union of joint operation of act or omission to act, and intention or criminal negligence. A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence. The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted . . .

"I charge you that a person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence. An accident, in the eyes of the criminal law, is an event that takes place without one's foresight or expectation; that which takes place or begins to exist without design . . .

"I charge you on accident. The law of Georgia is that a person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence. An accident is an event that takes place without one's foresight or expectations; that which takes place or begins to exist without design."[10]

Franklin relies on Sandstrom v. Montana, — U. S. — (99 SC 2450, 61 LE2d 39) (1979). Sandstrom involved a charge that ". . . '[t]he law presumes that a person intends

---

[10] The court also correctly charged on reasonable doubt, the presumption of innocence and that: "[T]he burden is upon the State to prove to a reasonable and moral certainty and beyond a reasonable doubt every material allegation in each count of this indictment and I charge you further, that there is no burden on the defendant to prove anything. The burden is on the State."

the ordinary consequences of his voluntary acts.' " Id. at 44. This charge differs in several respects. First, it explains that *criminal* intent is not presumed. More importantly, the presumption in Sandstrom v. Montana, supra, was found to be constitutionally defective because the jury may have interpreted it as being conclusive or as shifting the burden of persuasion as to intent to the defendant. In the case before us the jury was instructed that the presumptions were rebuttable (i.e., were not conclusive) and that there was no burden on the defendant to prove anything. Considering the charge as a whole, we find reasonable jurors would not have interpreted the presumptions as being conclusive or as shifting the burden of persuasion to the defendant. Cupp v. Naughten, 414 U. S. 141, 146-147, 145-150 (94 SC 396, 38 LE2d 368) (1973); Boyd v. United States, 271 U. S. 104, 107 (46 SC 442, 70 LE 857) (1926); Agnew v. United States, 165 U. S. 36, 50-51 (17 SC 235, 41 LE 624) (1897); *Skrine v. State,* 244 Ga. 520 (1979).

Franklin also contends that the charge on accident violates Sandstrom because it states "a person shall not be found guilty . . . where it satisfactorily appears there was no criminal scheme or undertaking or intention . . ." He argues that the failure to specify what quantum of evidence is meant by "satisfactorily" renders the charge fatally defective. He urges that the jury may have understood that the burden was upon him to make it satisfactorily appear that there was no criminal intent. Reading the charge as a whole, we find no error. See footnotes 10 and 11. The jury could only have understood, correctly, that Franklin could not be convicted if the state failed to prove criminal intent beyond a reasonable doubt.

9. Franklin's tenth and final enumeration of error is that the trial court's charge on malice was unconstitutional. The charge included the following: "A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all

the circumstances of the killing show an abandoned and malignant heart." This charge comes from Code Ann. § 26-1101 which defines the crime of malice murder. Franklin argues that the phrase "shall be implied" has the same effect as a conclusive presumption and is constitutionally impermissible under Sandstrom v. Montana, supra.[11]

We do not agree with Franklin's conclusion that the charge is constitutionally impermissible. This charge on implied malice is definitional; i.e., it is in effect a statement that one definition of malice murder is an "implied malice murder" which is murder committed where no considerable provocation appears and where all

---

[11] The court also charged as follows: ". . . [I]t is for you, the members of the Jury to say after a consideration of all the facts and circumstances in the case, whether or not malice, express or implied, exists in the case." And the court charged: "Now, members of the Jury, I charge you that if you believe beyond a reasonable doubt that Raymond Lee Franklin, in Cobb County, at any time prior to the return of this indictment, with a weapon or instrumentality named in the indictment, and with malice aforethought, either express or implied, did unlawfully and intentionally shoot and kill the deceased, Claude Collie, as charged in the indictment, and you believe the weapon or instrumentality used in the manner used, if one was used, was one likely to produce death, then you would be authorized and it would be your duty to convict the defendant of the offense of murder and in that event, the form of your verdict would be, 'As to Count II, we, the Jury, find the defendant guilty.' " "Members of the Jury, if, from a consideration of the evidence or from a lack of evidence, you are not satisfied beyond a reasonable doubt and to a reasonable and moral certainty that the State has established the guilt of the defendant of the offense charged in Count I or Count II, or both, of this indictment, then it would be your duty to acquit him as to such count and the form of that verdict would be, 'As to Count I, we find the defendant not guilty.' 'As to Count II, we find the defendant not guilty.' "

the circumstances of the killing show an abandoned and malignant heart. Whenever a definition is given in charge, the effect is superficially like that of a conclusion in that once the jury finds all the elements of the definition beyond a reasonable doubt, they have necessarily found the defined term. However, a definition differs from a presumption in that there can be no illegality as to the definition because it establishes the elements required to be proved whereas a presumption establishes a presumptive equivalency, which may be artificial or fictitious, with the jury being authorized or required to find the one from the other. We find no error in the charge on implied malice. See also *Burney v. State,* 244 Ga. 33 (6) (1979), cert. den. — U. S. — (November 26, 1979).

10. *Sentence Review.* The defendant moved for and was granted a change of venue, from Cobb to Bibb County. We find the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor. Code Ann. § 27-2537 (c) (1). We have reviewed the trial court's charge in the sentencing trial and find that it complies with *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977), and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977).

We find that the evidence supports the jury's findings of the two aggravating circumstances beyond a reasonable doubt, (1) that the murder was committed while the offender was engaged in the commission of another capital felony, the armed robbery of the victim; and (2) that the murder was committed by a person who had escaped from the lawful custody of a police officer. Code Ann. § 27-2537 (c) (2).

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which death or life sentences were imposed, and we find that the similar cases listed in the appendix support the affirmance of the death penalty in this case. Although in some of the cases where the defendant was attempting to escape the victim was a law enforcement officer, in others the victim was not. The sentence of death imposed upon Raymond Lee Franklin is not disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Code Ann. §

27-2537 (c) (3).

*Judgment affirmed. All the Justices concur, except Jordan, J., who concurs in the judgment only, and Marshall, J., who dissents from Division 2.*

ARGUED SEPTEMBER 17, 1979 — DECIDED JANUARY 4, 1980 — REHEARING DENIED JANUARY 24, 1980.

*Dupree & Staples, Barry Staples,* for appellant.
*Thomas J. Charron, District Attorney, Arthur K. Bolton, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.

APPENDIX.

*Legare v. State,* 243 Ga. 744 (257 SE2d 247) (1979); *Stephens v. State,* 237 Ga. 259 (227 SE2d 261) (1976); *Collier v. State,* 244 Ga. 553 (1979); *Willis v. State,* 243 Ga. 185 (253 SE2d 70) (1979); *Spencer v. State,* 236 Ga. 697 (224 SE2d 910) (1976); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975).