36373. HOSCH v. THE STATE.

PER CURIAM.

Raymond Hosch was convicted of the malice murder of Frank Billings and sentenced to life imprisonment. The evidence showed that on the morning of November 18, 1978, the victim, Frank Billings, solicited a ride from Glenwood to Winder, Georgia, with Sonny Berry and Ellis Harris in Harris's Cadillac. En route, Billings asked for a cigarette but Berry didn't smoke. They stopped at the Capital Homes apartment project in Winder and Berry and Harris went into Berry's girlfriend's apartment. Billings, who stayed in the car, asked Berry to bring him a cigarette but Berry replied that his girlfriend didn't smoke. When Berry exited the apartment about 10 minutes later he saw Billings standing by the defendant's car on the driver's side. The defendant was in the driver's seat and a rifle barrel was protruding out of the window. Berry heard a shot and saw Billings fall. Berry said "You shot that man" and the defendant said that he did not know the

gun was loaded.

The defendant jumped out of his car and he and Berry proceeded to put Billings in the defendant's car. Billings' brother drove by at that point and the defendant told Berry not to stop him. As the defendant drove Billings to the emergency room of the hospital, he passed Billings' brother and motioned to him to follow, which the brother did. At the hospital emergency room the defendant said: "Come on and help me, I done shot your brother." When the defendant passed a police car just after leaving the hospital he stopped and told the policeman he had accidentally shot Billings. After going to the hospital, the policeman went to the defendant's home and took him into protective custody because a neighbor said "The Billings are on their way over here to get Raymond." Billings died from the wound to his abdomen.

The state called Kelly Fite, a firearms expert with the Georgia Crime Lab, who testified that he had examined the semi-automatic .223 caliber rifle identified as belonging to the defendant, that the fatal shot was fired from less than 12 inches and that he had checked the gun for accidental firing by dropping it from various heights and applying force on the sides and on the muzzle and found that none of these abuses caused the gun to fire; it would only fire with 5 pounds of force applied on the trigger. Fite also testified that when a magazine with live cartridges was placed in the gun, the gun was fired, and the magazine was then removed, one live cartridge would remain in the chamber.

The defendant testified that on the Saturday morning in question, he had gone to his sister's house after taking his daughter to get her hair done. At his sister's he saw a man with a gun and showed him his own new gun after removing it from the "boot" of his car. After they looked at the defendant's gun, the defendant put it in the back seat of his car and left. As he approached the Capital Homes apartments he saw Harris's Cadillac in the lot. Since Harris owed him money, he parked nearby, honked and called over to Billings, asking where Harris was. Billings replied that Harris would be out in a minute. Billings then got out of Harris's car, came over to the defendant's car, and asked for a cigarette. As the defendant reached for his cigarettes, he said "Frank, let me show you a gun," reached back, picked up the gun from the back seat and handed it through the window to Billings. As he handed it to him, the defendant had his finger on the trigger. As Billings took the gun by the barrel he jerked it and the gun, a semi-automatic rifle, fired. The defendant testified that the clip was not in the rifle and that he didn't know the gun was loaded although he knew that the absence of the clip didn't mean the gun was not loaded.

A deputy who testified that he interrogated the defendant related a similar statement. There was no evidence of any ill will between the victim and the defendant. The defendant appeals enumerating eight errors.

1. The trial court did not err in admitting the testimony of Kelly Fite to the effect that the gun would not fire accidentally. Fite was called as a witness for the state during its case in chief. The burden of proof is on the state. Fite's testimony was relevant as to the possible defense of accident.

2. The trial court erred in allowing a deputy to testify that after being read his rights and after answering one question, the defendant refused to answer a second question and then said his lawyer would be available the next day. The defendant has the right to remain silent and to be represented by counsel and the exercise of these rights is not to be used as evidence against him. *Knowles v. State,* 246 Ga. 378 (13) (1980).

However, in view of our disposition of this case, we need not decide whether the admission of this evidence was so fundamentally unfair as to deprive the defendant of due process. See *Smith v. State,* 244 Ga. 814 (1) (262 SE2d 116) (1979).

3. Defendant challenges the court's charge that: "I charge you that the law presumes that a person intends to accomplish the natural and probable consequences of his act, and if a person uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily used and thereby causes the death of a human being, the law presumes the intent to kill. These presumptions may be rebutted." Defendant argues that this charge falls within the proscription of Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979).

A charge somewhat similar to the first presumption quoted above was found unconstitutional in Sandstrom v. Montana. However, in Sandstrom the jury was not instructed that the presumption may be rebutted. Sandstrom held that the charge "The law presumes that a person intends the ordinary consequences of his voluntary acts" is unconstitutional for two reasons: The jury may have interpreted the presumption as conclusive; the jury may have interpreted the presumption as shifting the burden of persuasion to the defendant on the element of intent. The Court held that either interpretation would violate the 14th amendment requirement that the state prove every element of a crime beyond a reasonable doubt.

Because the trial court here expressly charged that these presumptions could be rebutted, they clearly are not conclusive (i.e., irrebuttable upon proof of the facts triggering the presumption).

*Lackey v. State,* 246 Ga. 331 (1980). Thus the question becomes whether the charge could have been interpreted by a reasonable jury as burden shifting, i.e., as directing a finding of intent absent proof by the defendant to the contrary by a quantum of proof greater than "some" evidence. Sandstrom v. Montana, supra, 442 U. S. at 517, 519; see Mullaney v. Wilbur, 421 U. S. 684, 702 n. 31 (95 SC 1881, 44 LE2d 508) (1975); Ulster County Court v. Allen, 442 U. S. 140, 157 n. 16 (99 SC 2213, 60 LE2d 777) (1979). In view of the trial court's charges on the presumption of innocence, the burden of proof, reasonable doubt, and intent as a jury question, we find that the jury could not have interpreted the charge as shifting the burden of persuasion to the defendant. *Lackey v. State,* supra; Mason v. Balkcom, 487 FSupp. 554, 559 (M.D. Ga. 1980).

Although we find that this challenged charge is not error in this case, we do not approve its continued use.[1] Absent explanatory language the charge should not be cast in terms of "The law presumes," a phrase which standing alone, as the United States Supreme Court has pointed out in Sandstrom, supra, is subject to misinterpretation by the jury.[2]

4. Defendant also challenges the trial court's charge that: "[W]here the State's evidence shows the commission of a homicide by the accused by the use of a deadly weapon, the law presumes murder." The jury was not clearly instructed that this presumption could be rebutted. The absence of such cautionary language clearly applicable as to this presumption was particularly damaging since the caution was included in the other segments of the charge relating to presumptions.

Here the presumption is phrased in terms of the ultimate issue to be decided, "murder." The gist of this instruction is that once the state proves a person died from a gun held by the accused, the crime of murder is presumed. Hence the jury could reasonably have understood this charge as being conclusive or burden shifting within the meaning of Sandstrom, supra, and thus we agree with the

---

[1]In disapproving the continued use of this charge we necessarily disapprove *Kramer v. State,* 230 Ga. 855 (1) (199 SE2d 805) (1973), and the Superior Court Judge's pattern charge based thereon.

[2]All seven Justices of the Court approve the use of the following charge: "I charge you that you may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of his intentional acts, and if a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily used and thereby causes the death of a human being, you may infer the intent to kill."

defendant that this charge constitutes reversible error in this case.[3]

The effect of the charge, if the jury did not understand it to be conclusive, was to put the burden of proving accident upon the defendant. Such an instruction is particularly inappropriate where the defense is accident or self-defense because the word "intentional" is not used to qualify either the homicide or the use of the weapon. Under the facts of this case and in the absence of clear instruction that this presumption is rebuttable, we cannot find that the jury was correctly instructed, considering the charge as a whole, or that the giving of this charge was harmless beyond a reasonable doubt. (The harmless error finding in Mason v. Balkcom, supra, is inapplicable here because there "intent to kill" was not the issue per se and the jury was charged that the burden was on the state to prove beyond a reasonable doubt that the defendant was not acting in self-defense.)[4]

5. Defendant's final challenge is to the charge that: "Malice shall be implied where no considerable provocation appears, and where all the circumstances of the killing show an abandoned and malignant heart." This charge is taken verbatim from Code Ann. § 26-1101(a) which defines the crime of murder. The portion complained of defines implied malice. We have previously upheld the constitutionality of this charge, and continue to do so. *Franklin v. State,* 245 Ga. 141 (9) (263 SE2d 666) (1980); *Burney v. State,* 244 Ga. 33 (6) (257 SE2d 543) (1979), cert. denied, 100 SC 463 (1979).

6. The trial court did not err in its recharge to the jury or in overruling the motion for mistrial based on the jury's inability to reach a unanimous verdict sooner than it did.

7. The defendant also contends that the evidence is insufficient to support his conviction of murder. The jury was not required to accept the defendant's version of the shooting that the victim jerked the barrel of the gun and pulled it forward himself. We note that this version was not mentioned by the defendant when he answered Berry's accusation, when he spoke to the deceased's brother at the hospital or when he stopped the policeman after leaving the hospital. Nor was the jury required to accept the fact, testified to by the defendant, that he did not know the gun was loaded. Absent defendant's statement at the scene and his testimony at trial, the evidence shows that the defendant shot and killed the deceased. The

---

[3]This charge was found to be reversible error before Sandstrom in *Jordan v. State,* 232 Ga. 749 (5) (208 SE2d 840) (1974).

[4]Although we disapprove the continued use of this charge, we offer no substitute because the instruction approved in footnote 2, above, covers the same subject.

jury could have found the defendant guilty beyond a reasonable doubt.

8. For the reasons stated in Division 4, above, the defendant is entitled to a new trial.

*Judgment reversed. All the Justices concur, except Undercofler, C. J., Hill and Clarke, JJ., who concur specially.*

ARGUED JULY 7, 1980 — DECIDED
SEPTEMBER 24, 1980.

*Nathaniel David Wages, Ellen Gettinger, Robert L. Whatley,* for appellant.

*Nat Hancock, District Attorney, Timothy G. Madison, Assistant District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr., Assistant Attorney General,* for appellee.


HILL, Justice, concurring specially.

"A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears, and where all the circumstances of the killing show an abandoned and malignant heart." Code § 26-1101.

There is no evidence in this case of a deliberate intention to kill; i.e., there is no evidence of express malice. Nor is there any evidence of an abandoned and malignant heart; i.e., there is no evidence of implied malice.

I am supported in this conclusion by the trial judge's finding that "there exists no evidence in the record of any intent to kill or any evidence that the defendant intentionally discharged the weapon . . ." except the testimony of Kelly Fite. Fite's testimony that the gun would not fire accidentally by being dropped or hit does not prove intent to kill beyond a reasonable doubt.

I therefore dissent to Division 7 of the majority decision but join the other divisions and concur in the judgment.

I am authorized to state that Chief Justice Undercofler, and Justice Clarke, joins in this special concurrence.