## 38624. JOHNSON v. THE STATE.

WELTNER, Justice.

Larry Verdell Johnson shot and killed Eddie Rivers, Jr. with a handgun. Johnson appeals from his conviction of murder and sentence of life imprisonment.

1. Johnson contends that the trial court erred in giving to the jury the State's requests to charge as follows: ". . . and I charge you that under our law when one uses a deadly weapon, a gun, in the usual and natural manner in which the weapon is used, to kill, and death results, the law presumes the intention on the part of the defendant to kill the victim. Under our law, where the State proves that a homicide occurred, the law presumes that the killing was murder, however, that presumption may be rebutted." The charge in its entirety is set out below.[1] Johnson contends that this language had the effect of shifting the burden of proof to the defendant as to the element of intent and as to the ultimate issue to be decided, that is, whether Johnson had committed the crime of murder, all in violation of the holding in Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979).

---

[1] "Members of the jury, you are trying the case of The State vs. Larry Verdell Johnson, who is charged in case number 3743, in the Superior Court of Lee County, with the crime of murder. Now, the defendant entered a plea of not guilty, thereby denying each and every essential element of this crime.

"I charge you now that neither the indictment nor the plea of not guilty is evidence, and it's not to be considered by you as evidence. The indictment and the plea of not guilty form the issue which you are to determine. Every person is presumed to be innocent until proved guilty. No person shall be convicted of a crime unless each essential element of such crime is proved beyond a reasonable doubt, and I charge you that the burden of proof rests with the State to prove each essential element of the crime charged in this indictment beyond a reasonable doubt. The State, however, is not required to prove the guilt of the defendant beyond all doubt, or to a mathematical certainty. Moral and reasonable certainty is all that can be expected in a legal investigation. A reasonable doubt means just what it says. It is the doubt of a fair mind, impartial juror, honestly seeking the truth. It is not an arbitrary nor a capricious doubt, but it is a doubt arising from a consideration of the evidence, from a conflict in the evidence, or from a lack of evidence. Now, if, after giving consideration to all of the facts and circumstances of the case your minds are wavering, unsettled and unsatisfied, then that is the doubt of the law and you should acquit. If that doubt does not exist in your minds as to the guilt of the defendant, then you should convict.

"Now, a person commits murder when he unlawfully and with malice afore-thought, either express or implied, causes the death of another human being. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears, and where all the

(a) In considering a possible violation of Sandstrom we must first determine what construction a reasonable juror might have placed on the contested charge. Id. at pp. 516, 517. In this case, the first sentence of the excerpted portion of the charge may have led the jury to believe that the intent to kill was conclusively presumed. Such a reading would be reinforced by the next sentence, which states that such a homicide is presumed to be murder, ". . . however, *that* presumption may be rebutted." (Emphasis supplied.) The trial court thus advised the jury relative to *two* presumptions, designating only the latter as subject to rebuttal. Intent to kill being an essential element of the crime of malice murder, the burden was on the prosecution to prove intent beyond a reasonable doubt. In re Winship, 397 U. S. 358 (90 SC 1068, 25 LE2d 368) (1970); Mullaney v. Wilbur, 421 U. S. 684 (95 SC 1881, 44 LE2d 508) (1975). We therefore

---

circumstances of the killing show an abandoned and malignant heart.

"I charge you that in establishing the crime of murder of the deceased by the defendant, it's not necessary for the State to prove any particular motive on the part of the defendant. And I charge you that under our law when one uses a deadly weapon, a gun, in the usual and natural manner in which the weapon is used, to kill, and death results, the law presumes the intention on the part of the defendant to kill the victim. Under our law, where the State proves that a homicide occurred, the law presumes that the killing was murder, however, that presumption may be rebutted.

"I charge you further, that under our law a bare fear of injury can never be regarded as sufficient to justify a homicide.

"Now, members of the jury, by no ruling which the court has made during the progress of this trial has the court intimated or expressed any opinion upon the facts of this case, upon the credibility of the witnesses, upon the weight of the evidence, or upon the guilt or innocence of the defendant. By no portion of this charge has the court intimated or expressed any opinion upon any of these matters, each and all of which belong exclusively to you for your judgment and your determination. The court states the law, you find the facts. You apply the one to the other and in that way you decide the case.

"The charge of the court should be received and considered by you in its entirety, as a whole, as one body of law applicable to the case. Such repetition as did and might occur during the progress of this charge did not take place for the purpose of emphasizing the principle or principles of law repeated over other principles of law, but such repetition as did occur took place simply in order to enable the court to expound the law to you better as the charge progressed in your presence.

"You are the sole judges of the facts in this case. You are the sole judges of the credibility of the witnesses. You are the sole judges of the weight of the evidence. You are the sole judges of the guilt or innocence of the prisoner at the bar.

"Upon retiring to the jury room you will select one of your number to act as foreman or forelady, who will preside over your deliberation and who will sign the verdict to which all twelve of you freely and voluntarily agree.

"You may now retire to the jury room and do not begin your deliberations until after you have received the indictment and the documentary evidence. You may now go to the jury room."

hold that the challenged instructions relieved the State of its constitutional burden of proving every element of the crime of murder beyond a reasonable doubt.

In *Hosch v. State,* 246 Ga. 417 (3) (271 SE2d 817) (1980), we upheld a charge somewhat similar to the one at issue, where the trial court instructed the jury that the presumption of intent was rebuttable. We concluded in *Hosch* that "[i]n view of the trial court's charges on the presumption of innocence, the burden of proof, reasonable doubt, and intent as a jury question, we find that the jury could not have interpreted the charge as shifting the burden of persuasion to the defendant." Id. at 420. In many cases where we have upheld charges to the jury against attacks based on Sandstrom, it appears that the juries were instructed that criminal intent is never presumed, that the burden of proving intent rests on the State, or that intent is always an issue for the jury. *Collins v. State,* 248 Ga. 687 (286 SE2d 8) (1982); *Wells v. State,* 247 Ga. 792 (2) (279 SE2d 213) (1981); *Lackey v. State,* 246 Ga. 331 (11) (271 SE2d 478) (1980); *Bridges v. State,* 246 Ga. 323 (3) (271 SE2d 471) (1980); *Blair v. State,* 245 Ga. 611 (5) (266 SE2d 214) (1980); *Patrick v. State,* 245 Ga. 417 (8) (265 SE2d 553) (1980); *Franklin v. State,* 245 Ga. 141 (8, 9) (263 SE2d 666) (1980); *Smith v. State,* 244 Ga. 814 (4) (262 SE2d 116) (1979); *Skrine v. State,* 244 Ga. 520 (260 SE2d 900) (1979). See also Code Ann. § 26-605.

In the present case, however, there is no language in the jury charge which controverts the presumption of intent.[2] Thus, even viewing the charge as a whole (see Cupp v. Naughten, 414 U. S. 141, 146-147 (94 SC 396, 38 LE2d 368) (1973)), a reasonable juror might have understood the intent to kill as conclusively presumed.

The State contends that, if it was error under Sandstrom to charge a presumption of intent to kill, nevertheless the evidence of such intent was so overwhelming as to render the error harmless beyond a reasonable doubt. See Chapman v. California, 386 U. S. 18, 24 (87 SC 824, 17 LE2d 705) (1967). Johnson admitted killing the victim in the course of an argument, and his only theory of defense was based on alleged provocation sufficient to reduce the crime from murder to voluntary manslaughter. While the evidence overwhelmingly supports the conclusion that Johnson was guilty of a

---

[2] The trial court correctly instructed the jury that ". . . the burden of proof rests with the State to prove each essential element of the crime charged in this indictment beyond a reasonable doubt." However, as noted in Sandstrom, "[t]he jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied." 442 U. S. at pp. 518-519, n. 7.

felonious homicide, we cannot say that it conclusively establishes the intent to kill requisite to a conviction for the crime of murder. The jury was not instructed as to the law of voluntary manslaughter (see Division 2, infra), and lack of premeditation and of a deliberate intent to kill appear to have been Johnson's only defense, and crucial to the case.

Nor can we accept the State's contention that, as Johnson's only theory of defense centered around voluntary manslaughter, intent to kill was admitted, or was not at issue. A defendant does not admit the element of intent by attempting to raise a defense which is never submitted to the jury.

(b) Johnson also objects to the second sentence of the excerpted portion of the charge: "Under our law, where the State proves that a homicide occurred, the law presumes that the killing was murder, however, that presumption may be rebutted." We have found the giving of such a charge to be reversible error where the jury was not instructed that the presumption could be rebutted. *Hosch,* supra, 246 Ga. 417 (4). Among the objectionable features of this charge are that it is phrased in terms of the ultimate issue to be decided, "murder," and it fails to specify that the homicide must be intentional and unlawful. Id. Although in this case the jury was told that the presumption of murder was rebuttable, nevertheless a reasonable juror might have concluded that the defendant was required to disprove the accusation of murder by some quantum of proof, thus impermissibly shifting the burden of proof from the State to the defendant. Sandstrom, supra, 442 U. S. at p. 524. Mullaney, supra, 421 U. S. at pp. 691-704.

2. Johnson contends that the trial court erred in failing upon request to instruct the jury on the law of voluntary manslaughter. See Code Ann. § 26-1102.

On the night of July 24, 1981, Johnson, age 23, was sitting with some friends on a set of truck scales in the rear parking area of a barbeque establishment in Smithville, Georgia. Johnson had a .38 caliber revolver concealed under a towel placed next to him on the scales. The victim, Eddie Rivers, Jr., age 16, was in the front parking area of the restaurant.

According to Johnson's own statement, Johnson called out to Rivers, inviting him around back for a beer. Rivers began "cussing" at Johnson, calling him a "half-legged son of a bitch" (Johnson walked with a limp), insulting his mother, and threatening to beat him up. Johnson told Rivers to go away, pointing to the front parking area, but Rivers hit his hand "three or four times." Johnson produced the pistol and shot Rivers in the head.

The testimony of witnesses for the State as to who started the

argument was unclear, and they expressed some disagreement as to who slapped whose hand (one witness indicated that the victim pointed and Johnson slapped his hand away). It is the State's position that Johnson initiated the argument as an excuse for killing the victim, and that he cannot rely on such conduct to justify a charge on voluntary manslaughter. The State places particular emphasis on the fact that Johnson had secretly armed himself prior to the confrontation.

We conclude that under the facts of this case an appropriate charge as to the law of voluntary manslaughter should have been given upon defendant's request.

As these rulings are sufficient to dispose of the present appeal, we do not consider the remaining enumerations of error.

*Judgment reversed. All the Justices concur, except Jordan, C. J., who dissents as to Division 1.*

DECIDED JUNE 30, 1982.

*Black & Black, William E. Cannon, Jr.,* for appellant.
*L. Lyn O'Berry, Assistant District Attorney, Michael J. Bowers, Attorney General, Nichols G. Dumich, Assistant Attorney General,* for appellee.