## 36002. BLAIR v. THE STATE.

BOWLES, Justice.

Eddie Blair, Jr. was indicted by a grand jury in Richmond County, Georgia for the offense of murder of one William Harper. Following a trial by jury he was found guilty and sentenced to life imprisonment. The evidence against him showed that in the middle of March, 1979 he went to a home of a cousin and asked if he could stay there until he could get a job. The cousin agreed, appellant moved in and stayed approximately two weeks. On March 22, 1979, appellant was seen in his room and had a .22 caliber pistol which was identified at trial and admitted in evidence. Appellant left the home of the cousin on Saturday, March 22. During his stay there police came to the home and told the occupant that appellant had reported his gun as being stolen. During this period of time his behavior appeared normal. On the

evening of March 31, 1979, appellant was seen lying on a bench in a bar known as McCann's Bar and appeared to be drunk. Later that evening he was seen standing outside the Paramount Club and was still drunk. The owner of the Paramount Club around 11 o'clock p. m. was taking inventory in the package store connected to that club when he saw appellant having a conversation with another person in front of the club. At that time appellant was seen to take a pistol and put it to the other man's head. He then took it away and fired it into the air. He then went back and leaned up against a car in the street. The homicide victim, William Harper, was seen to come out of the door of the lounge and go across the street to a drink machine. When Harper hit the drink machine appellant got off the car against which he was leaning and started walking across the street. About three-quarters of the way he fired a shot into the drink machine and proceeded up to where the victim was standing. Appellant and the victim said something to each other and the victim threw his hands up. Appellant then fired a shot, the victim grabbed himself and fell to the ground. The victim appeared to try to roll under an automobile and appellant fired two more shots at him. Appellant then headed up the street away from the scene. He was then seen to go down an alley that was a dead-end and when he came back out he was not wearing the hat he had worn when he went down the alley. When a witness in the case shouted at appellant, he began to run but was successful in eluding the witness and the police officer who had been summoned. The medical examiner for Richmond County performed an autopsy on the victim and found three gunshot wounds to the body. There were two bullets remaining in the body and these were removed. The cause of death was proven to be a bullet wound in the chest that went through the big arteries of the heart. The two bullets that were removed from the body were kept by the examiner until turned over to a detective who in turn carried the bullets enclosed in test tubes to the State Crime Laboratory and turned them over to a lab representative. A detective testified that he saw appellant on April 4, 1979 in Augusta and upon a pat-down search found a weapon on his person. This

weapon was also hand-carried to the State Crime Lab representative. Expert testimony was presented that the two bullets removed from the body were fired from the revolver found on appellant's person. Appellant offered some evidence of a mental disorder. He testified in his own behalf stating that he remembered going to Charlie McCann's two or three days prior to his arrest but that he did not have his pistol with him on the night that the victim was shot but found it in the backyard on the 4th of April. He claimed he did not remember anything after talking to a female outside the Paramount Club. Further facts will be stated if necessary to a decision with respect to any enumeration of error.

(1) Appellant contends that the trial court erred in overruling his objection to the admissibility in evidence of the bullets in question absent a showing of an unbroken chain of custody. The medical examiner testified that he removed the bullets from the body of the victim and placed the bullets in test tubes. He then placed his initial on at least one of the bullets prior to placing them in the test tube. He kept them locked in a desk drawer which was in his sole control until he turned the bullets over to a detective Sims. Sims testified that upon receipt of the bullets from the medical examiner he hand-carried the bullets to one Gary Theisen at the State Crime Laboratory. Theisen testified about receiving the bullets and that he could identify the bullets at trial as those that he had used to run the comparison test. Assuming for the sake of argument that the bullets are not distinct and recognizable objects that can be identified,[1] it appears clear that the chain of custody was unbroken. The fact that the medical expert could not state conclusively that the bullets shown to him at trial were those he removed from the body did not render them inadmissible. *Douthit v. State,* 239 Ga. 81 (235 SE2d 493) (1977). The evidence clearly shows how the bullets were first obtained and how they were carefully delivered to the ultimate witness who furnished the comparison opinion. The trial court did not err in admitting the bullets in evidence.

---

[1]But see in this regard *Sims v. State,* 243 Ga. 83, 85 (252 SE2d 501) (1979).

(2) Appellant contends that the trial court erred in not granting his motion for mistrial because of the improper introduction in evidence of his character by the state. Appellant attempted to show at trial that he had a history of psychosis in order to support a defense of insanity. On cross examination counsel for appellant asked a witness who was a cousin of the appellant if he had known appellant had been admitted to a hospital and if he had known that he had been charged with a crime before. Appellant having first introduced evidence of his hospitalization and evidence of other crimes by his own questions, he will not now be heard to complain that the court did not declare a mistrial when counsel for the state asked a similar question. Additionally, the trial court sustained appellant's objection and instructed the prosecution not to go into any such evidence. Following those instructions, counsel did not ask for any additional instructions nor did he renew his attempt to have a mistrial declared. See *Chandler v. State,* 143 Ga. App. 608, 609 (239 SE2d 158) (1977) and *Clyatt v. State,* 126 Ga. App. 779, 786 (192 SE2d 417) (1972). This enumeration is without merit.

(3) Appellant's next enumeration contends that the state did not introduce sufficient evidence that the defendant in this case did the unlawful act with malice aforethought, either expressed or implied. It is for the jury to determine whether any killing is intentional and malicious from all the facts and circumstances. *Smith v. State,* 238 Ga. 581 (234 SE2d 500) (1977). The trial judge charged the jury as to implied malice. Considering the evidence in the light favorable to the verdict we find it entirely sufficient to enable any rational trier of fact to find that each element of the offense was proven beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(4) Appellant contends that trial court erred in its charge to the jury upon the "test" and "standard" when a defense of insanity is imposed by limiting the jury to specific abnormalities in the following charge: "Mental abnormality or mere weakness of mind is no excuse unless it amounts to imbecility or idiocy which deprives the offender of the ability to distinguish between right and

wrong."

The charge to the jury must be viewed as a whole and not taken as single instructions in artificial isolation. Cupp v. Naughten, 414 U. S. 141, 147 (94 SC 396, 38 LE2d 368) (1973); *State v. McNeill,* 234 Ga. 696, 697 (217 SE2d 281) (1976). The trial court in its instructions explained the law to the jury in more detail than the isolated excerpt complained of by appellant. Additionally, the court charged: "Our law declares that a person shall not be convicted of any crime committed while insane. The test is that if a man has reason sufficient to distinguish between right and wrong in relation to a particular act about to be committed, he is criminally responsible. The standard by which the acts are to be judged is that of the conduct of a reasonable person. To be punished by law, a person must have sufficient memory, intelligence, reason, and will to enable him to distinguish between right and wrong in regard to the particular act about to be done, to know and understand that it will be wrong, and that he will deserve punishment by committing it. Though the accused may not be able to evaluate the quality and consequences of his act to the same degree as a normal and average individual, still that would be no defense nor excuse him if he is able to distinguish between right and wrong." The trial court also went on to explain that the jury may consider the "acts and mental condition of the accused as revealed by the evidence before and after the commission of the alleged offense, if any, and the declarations, if any, of the defendant made at the time of the alleged offense or reasonably [close] thereto as proof of mental condition at the time of the alleged crime." Considering the charge as a whole it is clear that the jury was properly instructed as to tests that may be applied in determining the sanity of the appellant. The instructions given were not erroneous.

(5) Appellant contends that the trial court erred in its charge to the jury shifting the burden to defendant in violation of his Fourteenth Amendment rights to due process under the United States Constitution, citing the following excerpt: "I charge you a person of sound mind and discretion is presumed to intend the natural and probable consequence of his acts, but this presumption may be rebutted . . ." He contends that the jury may have

interpreted the court's instruction to mean that after the state proved the death and other additional facts not themselves establishing the element of intent, the burden shifted to the defendant to prove that he lacked the requisite mental state, citing Mullaney v. Wilbur, 421 U. S. 684 (95 SC 1881, 44 LE2d 508) (1975) and Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979). We have recently upheld a charge identical to the one complained of in *Skrine v. State*, 244 Ga. 520 (260 SE2d 900) (1979). As in *Skrine*, the jury was charged that the presumption could be rebutted and that a person would not be presumed to act with criminal intention. A similar charge to the one given was also approved by this court in *Moses v. State*, 245 Ga. 180 (1980). Taking the charge of the trial court as a whole it was not impermissibly burden shifting and did not violate the holdings of the United States Supreme Court relied on by appellant.

*Judgment affirmed. All the Justices concur.*

SUBMITTED FEBRUARY 29, 1980 — DECIDED APRIL 9, 1980.

*Flanagan & Neely, Vernon J. Neely,* for appellant.
*Richard E. Allen, District Attorney, Leon Barfield, Assistant District Attorney, Arthur K. Bolton, Attorney General, Mary Beth Westmoreland, Staff Assistant Attorney General,* for appellee.