37738. MULLIS v. THE STATE.

MARSHALL, Justice.

The defendant, Elaine Mullis, appeals from her conviction of murder and life sentence.

1. The appellant's version of the evidence is that her husband, the victim, had beaten her on previous occasions; and that, just prior to the homicide, he had slapped her face, hit her on the head with a can or bottle, threatened to kill her, crashed her head into a wall, grabbed her by the throat, and engaged in a struggle, during which the knife she contended she had been using to slice tomatoes accidentally stabbed him in the left chest when they fell against the stove in their kitchen as they struggled. However, there was evidence from which a rational trier of facts could find that she had made prior attacks on him, once with a knife, stating that she would "cut his guts out"; that she had been drinking and taking pills, and was drunk at the time of the homicide; that the victim had had to physically restrain her in her unprovoked attack on a muscular dystrophy victim; that she had then hid a knife in her pants and stabbed the victim when he tried to calm her down.

The state impeached the main defense witness, the son of the victim and the appellant, by other testimony and by the witness' own statement the day following the homicide that his mother, the appellant, had murdered the victim. Her testimony as to prior hospitalization because of beatings by the victim, was impeached by proof that the hospitalization was due to an automobile wreck. Her testimony that she had never before this occasion been unable to recall events, was impeached by medical testimony as to her history of prior memory loss. Finally, her testimony that she had taken out many warrants for the deceased, was impeached by a showing that none had ever been taken.

The evidence when construed in the light favorable to the verdict is sufficient to enable any rational finder of facts to find that each element of the offense was proved beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The trial judge properly overruled the motions for a directed verdict, judgment n.o.v., and a new trial on the general grounds (enumerated errors 1, 2 and 3).

2. It was not error to exclude testimony of defense witness

Hildobrant as to the "battered wife syndrome," contended in enumerated error 4 to be contra to *Smith v. State,* 247 Ga. 612 (277 SE2d 678) (1981), where the testimony sought to be admitted related to the reasonable fears of a defendant which could be comprehended by the average juror and does not meet the test in *Smith,* supra, that it relate to evidence difficult for the average juror to comprehend.

3. A mistrial was not demanded, as contended in enumerated error 5, by the fact that the alternate juror bought lunch for state's witness Carver, which is alleged to be jury misconduct and reversible error. The trial judge ascertained that the two men had not discussed the merits of the case or the credibility of Carver's testimony, and he excused the alternate juror from the jury and did not allow him to communicate with the other jurors. Following this, the appellant did not request any additional instructions or measures by the court nor renew her motion for a mistrial.

4. Enumerated error 6 contends that the trial court erred in allowing certain testimony over objection on grounds (1) that it was not in rebuttal, as it purported to be, but merely a reopening of the state's case, and (2) that the witnesses were called on rebuttal as a guise to get past the requirement, after demand, to serve defense counsel with a list of witnesses prior to trial.

The state's witness, Gail Mullis, testified that she had overheard the appellant telling her mother over the telephone on the night of the murder, "I'm going to die tonight, or somebody." The appellant later testified, denying making the call and stating that it was "one person's word against mine." Under these circumstances, it was not an abuse of discretion to permit the state to present a witness from the telephone company after the case in chief to prove that the call had been made. Whether or not it was proper rebuttal testimony, it was not harmful to admit it, since it was cumulative and since there was no objection made at the time it was offered. Enumerated error 6 is without merit.

5. It was not harmful, if error, as contended in enumerated error 7, to exclude certain allegedly admissible evidence of the victim's prior specific acts of violence. Even as to such part of this testimony as was not hearsay, this case is distinguishable from *Milton v. State,* 245 Ga. 20 (262 SE2d 789) (1980), relied on by the appellant, in that in the present case there was evidence that the appellant had armed herself with a knife; that the victim was unarmed and had no history of use of deadly weapons such as would justify the appellant's use of deadly force; and that the victim was not the aggressor, but was merely trying to calm down the appellant and protect his ill friend. Furthermore, even if the evidence could be construed as showing the victim to have been the aggressor, the excluded evidence was merely

cumulative of other evidence as to prior beatings, etc.

6. It is not usually cause for new trial that an entire Code section is given, even though a part of the charge may be inapplicable under the facts in evidence. *Keller v. State,* 245 Ga. 522 (1) (265 SE2d 813) (1980) and cits. In view of the evidence of the appellant's aggression toward Carver and the victim, the unobjected-to charge of the entirety of Code Ann. § 26-902, including subsection (b), was not grounds for a new trial on the theory that subsection (b) was unsupported by the evidence, required her to put up evidence in support of her defense of self-defense, and placed a burden on her to overcome a presumption that she initially provoked the use of force against herself or was engaged in mutual combat. Enumerated error 8 is without merit.

7. Enumerated error 9 contends that — although the trial judge charged the jury on murder, voluntary and involuntary manslaughter, self-defense and justified homicide — his instruction giving the form of verdicts which included only "not guilty," "murder," and "voluntary manslaughter," was an expression of his opinion that the appellant could be found guilty of only murder or voluntary manslaughter. The charge viewed as a whole, however, was neither confusing to the jury nor an expression of opinion.

8. Charges on both voluntary and involuntary intoxication were, contrary to the appellant's contention, authorized by evidence that the appellant had drunk some liquor, taken three pills, and was drunk within less than an hour and a half before the homicide. Enumerated errors 10 and 11 are without merit.

9. Enumerated error 12 complains of the admission in evidence of certain statements made by the defendant while she was allegedly in custody, without having been given the Miranda warning.

Before the investigating police officer had even asked the appellant any questions or placed her in custody, she voluntarily confessed that she had killed her husband. Since the appellant was not in custody, there is no requirement that a Miranda warning be given.

Thereafter, the appellant was transported by some citizens, not police, to a local police station and placed in protective custody at the request of her family. Since the local station had no facilities for women, the police transported her to the Douglas, Georgia, police station. En route there, with no advice of Miranda rights or attempt to interrogate or talk with the appellant, she again volunteered that she had killed her husband. This voluntary statement, not made pursuant to custodial interrogation, was likewise admissible in evidence. See *Shy v. State,* 234 Ga. 816 (1) (218 SE2d 599) (1975) and cits. Moreover, the mere fact that the appellant may have been

intoxicated at the time of making the statement does not necessarily render it inadmissible. See *Hart v. State,* 137 Ga. App. 644 (2) (224 SE2d 755) (1976) and cits. The appellant was able to walk into the Douglas Police Station, and she was afforded a Jackson v. Denno hearing on the admissibility of her statement. Enumerated error 12 is without merit.

10. Enumerated error 13 is the trial judge's failure to inquire into alleged juror misconduct on his own initiative and grant a mistrial on that ground. The law is that "[w]henever such jury misconduct is *shown,* a presumption of injury to the defendant is raised, which the state must overcome by a showing of harmlessness." (Emphasis supplied.) *Johnson v. State,* 235 Ga. 486, 494 (6) (220 SE2d 448) (1975) and cits. Here, the defense counsel's mere *suspicion* of juror misconduct did not carry his burden of *showing* it, so as to put the burden on the state of showing harmlessness.

11. A mistrial was not required, as contended in enumerated error 14, to protect the appellant's right to a fair trial where, after two alleged outbursts by the victim's family in the courtroom, which were not shown on the record and apparently not noticed by the judge or the prosecutor, the judge, as a precaution, warned the audience not to make any signs, motions or reactions, and no further corrective action was requested. See *Shy v. State,* 234 Ga. 816, supra, (2) and cits.

12. Enumerated error 15 complains that the state's closing argument was improper in several respects.

First, it was not impermissible, as a "misstatement of the evidence," to argue that the knife went "to the heart," where the evidence showed that the victim was stabbed in the left side of his chest and that, had the knife penetrated further, it would have penetrated his aorta. The argument was proper to show malice in stabbing the victim directly over his heart.

Second, the implication that the appellant had attempted to use her car-wreck injuries to prove a beating by the victim, was authorized by the evidence.

Third, the testimony of witness Dr. Hildobrant was not misstated, nor was any ruling invoked on the objection or curative instructions sought.

13. In enumerated error 16, the appellant labels as illegally burden-shifting, the closing argument, that the appellant had to show that the victim threatened force. This "burden" was relative to the appellant's defense of self-defense. Moreover, even if it was burden-shifting, failure to declare a mistrial was not reversible error where the jury was thereafter charged to take the law only from the court and, at the conclusion of the trial, that the appellant had no burden in a criminal case, and where the motion for mistrial was not

renewed after the giving of curative instructions. *Blair v. State,* 245 Ga. 611 (2) (266 SE2d 214) (1980) and cits.

14. Absent a motion for mistrial, and where curative instructions were given, it was not reversible error (as a contended "sarcastic," personal opinion) for the prosecutor to argue that the first time a defense witness had "seen the murder," as testified to and acted out in the courtroom with defense counsel, was when they had practiced it in counsel's office. Enumerated error 17 is without merit.

15. Enumerated error 18 contends that the prosecutor's conduct was improper in several instances.

First, where the victim's son, an eyewitness to the homicide, had changed the testimony that he had previously given to police, and testified that the officers did not write down everything to which he had testified and neither let him read the statement after it was taken nor read it back to him — it was harmless error at most for the district attorney to make gratuitous remarks in connection with the offer in evidence of the statement. The record does not disclose that the statement was admitted in evidence.

Second, the evidence authorized the argument that the victim's son had screamed, "Mama has stabbed daddy." The fact that the prosecution repeated the quoted statement twice and indicated that the witness had "screamed and yelled at the top of his voice" (which were not authorized by the evidence) — was not harmful error where the court sustained an objection thereto.

Third, it was not grounds for mistrial that the district attorney commented upon the fact that defense counsel had asked the same question 10 times, where the judge instructed the prosecutor not to make any more such remarks in the jury's hearing.

Fourth, after defense counsel had "opened the door" on the issue of whether the district attorney had prevented the appellant from having a polygraph or truth serum test, it was harmless, if error, to permit the district attorney through examination to show that the appellant had not requested the tests, especially since she requested no curative instructions on this issue.

Fifth, mention that witness Carver was playing a song which had been played at the victim's mother's recent funeral, was not harmful error as prejudicial where testimony to this effect had not been objected to when first admitted and where the appellant herself had testified to this same fact.

Sixth, there was no harmful error in any of several of the prosecution's objections to improper questions by the appellant's counsel, which objections did not, contrary to the appellant's contention, state personal opinion as to the appellant's guilt or innocence.

*Judgment affirmed. Jordan, C. J., Hill, P. J., Clarke, Smith and Gregory, JJ., concur.*

DECIDED SEPTEMBER 30, 1981 —
REHEARING DENIED OCTOBER 20, 1981.

*Perry & Perry, Diane L. Perry,* for appellant.
*Vickers Neugent, District Attorney, Lew S. Barrow, Charles R. Reddick, Assistant District Attorneys, Arthur K. Bolton, Attorney General, Russell N. Sewell, Jr., Assistant Attorney General,* for appellee.