1504.  GOVERNOR *v.* THE STATE.

1. Statutes regulating the drawing of jurors are generally regarded as directory merely, and where there has been substantial compliance with legal requirements, any irregularity in the drawing which can not affect the right to a trial by a fair and impartial jury furnishes no ground for challenging the array.

·2. The definition of a reasonable doubt, by the court in charging the jury,. as "such a doubt as grows out of the testimony and leaves a reasonable mind wavering and unsettled," is probably too narrow and restricted.. A reasonable doubt may arise not only out of the testimony, but from the want of testimony, or it may be created by the statement of the defendant, or the manner and conduct of the witnesses in testifying, or the credibility of the witnesses, and other facts and circumstances connected with the case. Under the facts of this case, and considering the charge in its entirety, the jury could not have been misled or confused, and the error was harmless.

3. The verdict is fully supported by the evidence.

Accusation of carrying concealed weapon, from city court of Swainsboro—Judge Mitchell. October 1, 1908.

Argued December 8,—Decided December 22, 1908.

Bill Governor was convicted of the offense of carrying concealed weapons. Upon arraignment and before plea, the defendant filed a challenge to the array of jurors, on the following grounds:· (1) Because the jury drawn and put upon the defendant was not properly drawn and is not a legally impaneled jury. It was not the jury that was regularly drawn for service at the present term of the court, the regular jury having been drawn on. May 30, 1908, during the May term of the court, and required to· appear for service on the fourth Monday in August, 1908; and this. regular jury, after having rendered service in the court for five days at the present term thereof, was discharged without cause from further attendance. (2) Because the jury which is now put upon the defendant, and to which this challenge is directed, was. drawn on or about August 10, 1908, not at the regular term of the court, nor in open court, but by the judge, in the clerk's office,. in the presence of the clerk and the sheriff. (3) Because the: court had no legal authority to draw the panel of jurors now put· upon the defendant, and to which this challenge to the array is in-- terposed, for the reason that one had already been drawn for the regular August term, 1908, of the court, which term has not yet been adjourned, and the act creating the court does not authorize· the drawing of more than one jury for the same term of the court.

The court, on demurrer, overruled the challenge to the array; and exceptions pendente lite were filed. Following his certificate to the bill of exceptions is the following note by the judge: "At. the quarterly terms of our city court we assign the cases, both

civil and criminal. The jury, for the first week of the August quarterly term, was drawn at the May term, at which time I did not know that it would be necessary to hold a two-weeks term. When I went to make up my assignments for the August quarterly term, I found out, for the first time, that on account of the enormous amount of business on the docket, it would be necessary to have two weeks court, if I hoped to dispose of much of the business then pending. After consulting with the chairman of the Road and Revenue Commissioners and others, who strongly urged a two-weeks court, as there was quite a number of criminals in jail at an expense to the county, and all of whom were demanding jury trials, I decided to hold a two-weeks session. The jury for the first week had already been drawn at the previous May term and I decided that the ends of justice required that a new jury be drawn for the second week, and I did it. I drew the jury in the clerk's office in the court-house in the presence of the clerk and sheriff of the city court, who are also the clerk and sheriff of the superior court. I did not formally open court at the time I drew the jury, but the July monthly term had never been formally adjourned, so, technically speaking, the jury was drawn in open court. I believe I had a right under the law to draw the jury as I did, under Penal Code, §§862 and 871, also acts creating the city court (Acts 1906, §§25, and 27)."

The defendant filed a motion for a new trial, based on the usual general grounds, and also alleging error in the charge of the court on the doctrine of reasonable doubt, the excerpt excepted to being as follows: "Before you can convict, you must believe the prisoner guilty beyond a reasonable doubt. By a reasonable doubt the law means such a doubt as grows out of the testimony and leaves a reasonable mind wavering and unsettled. It is such a doubt as you can give a reason for; it must be based upon reason. It is not a guess or vague conjecture. You can not create for yourself a doubt and act upon it. You can not raise an artificial or captious doubt in order to acquit. Moral and reasonable certainty is all that can be expected in legal investigations. If, after you make all reasonable efforts to find out the facts, you have a reasonable doubt as to the defendant's guilt, it would be your duty to give him the benefit of the doubt and acquit him. But if, on the other hand, you are satisfied of his guilt beyond a reasonable doubt, to a reason-

able and moral certainty, then you would be authorized to find him guilty." It is alleged that the vice of this charge is in its definition of a "reasonable doubt;" that it limited a reasonable doubt to "something that grows out of the testimony," whereas a reasonable doubt may arise from any cause connected with the case, and especially where there is no testimony, or where the testimony is weak, or where there is conflict, or where the evidence is insufficient, or where there is impeaching testimony, or where there is any cause or circumstance connected with the case which would cause a reasonable man searching for the truth to be unable to decide, without such doubt, as to the truth of the case. The court overruled the motion for a new trial, and this judgment is excepted to.

*Saffold & Larsen,* for plaintiff in error.

*Henry R. Daniel, solicitor, Williams & Bradley,* contra.

HILL, C. J.    (After stating the facts.)

1. . The act creating the city court of Swainsboro provides, that "All laws with reference to the drawing, selecting and summoning traverse jurors in the superior courts shall apply to the city court;" and that "all laws in reference to the qualification, relations, impaneling, fining and challenging jurors, now in force in this State, or hereafter enacted by the General Assembly, regulating the same in the superior court, shall apply and be observed in said city court, except when inconsistent with the provisions of this act." Act 1906, §§25, 26, pp. 344, 345. See also Penal Code, §786. There is evidently a typographical ellipsis in section 27 of this act, but it is evident, from the act, that the judge of the city court was authorized in all cases, civil and criminal, to draw jurors to serve at the quarterly terms of said court, and also, in his discretion, for the monthly term of the court, in accordance with the general law of the State on the subject; and that if for any reason the judge of the court failed to draw the jury at the quarterly term, he might draw the jury in vacation, in the presence of the clerk or his deputy, or of the sheriff or his deputy. Under the authority of this act, the judge of the court, in conformity with the law, drew a panel of jurors to serve at the ensuing August term. After having drawn this regular jury, he decided that the business of the court could not be transacted during the one week, especially as there was a large number of prisoners confined in jail who were

insisting upon a jury trial, and who, for public reasons, should be tried at the ensuing August term, and he therefore drew the second panel of jurors for service for the second week of the August term. The judge states, in his note attached to the bill of exceptions, that this second jury was drawn by him in the clerk's office, in the presence of the clerk and sheriff of the court, and during the monthly July session of the court.

It may be conceded that as the judge had already drawn · the jury at the quarterly May term of the court, to serve for the quarterly August term thereof, he was not authorized, under the act creating the. city court, to draw the second panel of jurors to serve during the second week of the August term; but we think that he was authorized to draw this second jury under the general law of the State, which, by this special act and section 786 of the Penal Code, was made applicable to the drawing of juries in the city court of Swainsboro. Section 871 of the Penal Code provides, that, "whenever the session of any court of record shall be prolonged beyond the week or period for which juries were drawn · at the close of the preceding term, or the judge anticipates that the same is about to be so prolonged, or from any other cause such court has convened or is about to convene, and there have been no juries drawn for the same, the judge shall, in the manner prescribed for drawing juries at the close of the regular term, draw such juries as may be necessary, and cause them to be summoned." The act creating the city court of Swainsboro, supra, in section 16, permits the term of the court to last until the business is disposed of. If this section of the act is to be construed as permitting the regular quarterly terms of the city court of Swainsboro to sit for two weeks, or if the second week of the court should be considered as an adjourned term following the regular term of the first week in August, then we think it would have been competent for the judge to draw the jury for the second week, or for the adjourned term of the court, under the provisions of section 862 of the Penal Code, and under the decision of the Supreme Court in *Brinkley* v. *State,* 54 *Ga.* 371. But we think it clear that the second week of the court was simply a prolongation of the regular term of the first week, as was authorized by section 16 of the act mentioned, and we think, this being true, the judge was authorized, under section 871 of the Penal Code, to draw the jury for the second week.

Certainly if the judge had not drawn this second jury and the term of the court was prolonged beyond the week for which he had drawn the regular jury at the close of the preceding term, the judge could then, in his discretion, either have required the attendance of the regular jury for the second week, or have drawn another jury to serve during the second week. In such case the better plan, or one more in harmony with the spirit of our law on the subject of jury duty, would have been to draw a new jury for the second week, and not to have required a continuance of service of the regular jury beyond the one week. It is the policy of our law, in apportioning jury service among the citizens, to require that such service shall be for only one week during the term. Now, in this case, the judge, on account of the volume of business, anticipated that the August term of the court would continue longer than the one week, and, therefore, on the 10th day of August preceding the convening of the court on the fourth Monday in August, drew the jury for the second week.

As is said by the Supreme Court in *Woolfolk* v. *State, 85 Ga.* 85 (11 S. E. 819), "The several sections of the code which regulate the drawing of juries provide for the drawing of a jury in almost every conceivable case where one is needed; and the general tenor of the code is to give power and authority to the judge of the superior court to draw and summon juries whenever the business of the court requires it." This same reasoning would apply to the authority and power which the act creating the city court of Swainsboro gives to the judge of that court. It will be noted that section 871 does not fix any time for drawing the jury for the ensuing term of the court, or how long in advance of the convening of the court the jury shall be drawn. It provides in general terms that if the judge anticipates that the term will be prolonged, he is then authorized to draw a jury, to provide for the exigency of the prolonged term of the court as anticipated by him. As was said by the Supreme Court in the *Woolfolk* case, supra, on a question substantially similar to the one now under consideration, "It may not be quite obvious that the drawing of this jury falls within the exact letter of the statute, but that the spirit and meaning of the statute extends to it is manifest." And in that decision the court quotes with approval the ruling in *Rafe* v. *State, 20 Ga.* 60, that "the statutes regulating the selection, drawing and sum-

moning of jurors are intended to distribute jury duties among citizens of the county, provide for rotation in jury service, and to insure at each court the attendance of persons to serve on juries, and are no part of a regulation to secure to parties *impartial* juries."

Many decisions and text-writers construe the statutory provisions respecting the drawing of a panel of jurors as directory merely, and hold that irregularities in drawing a panel, unless plainly operating to the prejudice of the challenging party, form no ground for challenging the array. *Woolfolk* v. *State,* supra; *Rafe* v. *State,* supra; Friery *v.* People, 54 Barb. (N. Y.) 319; Thompson, Trials, §34; Thomp. & Mer. Juries, §143. In the Friery case, supra, the court holds that, "in the absence of any suggestion of fraud or misconduct, other than a mere failure to observe the regularities in drawing the jury, a challenge to the array will not lie for a disregard of the directions of the statute." Construing these statutes, therefore, regulating the drawing of jurors, as merely directory, and holding that where there has been a substantial compliance therewith, a challenge to the array should not be sustained for a mere irregularity in the drawing of the jury by the judge, we are clear that the challenge to the array in this case was properly overruled. The law guarantees a trial by a fair and impartial jury. There is no intimation in any part of this record that the jury in this case was not as fair and impartial as any jury that could have been obtained by the most exact and literal compliance with the statute, or that the defendant was deprived of any right because the judge of the court, anticipating that the term would be prolonged beyond the regular period of one week, decided to draw a jury for the second term of the court, rather than continue the regular jury in service longer than the first week of the term for which it had been drawn. Would the jury have been any more impartial or fair, or better qualified to give the defendant a fair and impartial trial, if the judge had waited until the expiration of the first week of the regular term of the court, when he saw that it was necessary to prolong the term for another week, and had then drawn the jury to serve for the second week? How is it possible that the fact that the jury was drawn two weeks before service was required of it, rather than a few days before such service was required, deprived the defendant of the right guaranteed to him of a trial by a fair and impartial jury? On the contrary, would not

the fact that the panel had been drawn two weeks before service have given the defendant an opportunity of examining the personnel of the jury that was to try him? We repeat what was so well said by the Supreme Court in the *Woolfolk* case, supra, that "the great and controlling question is, did the accused have a fair trial by an impartial jury? If so, the law has been complied with, and he has no right to complain that his challenge was not sustained."

2. The definition of a "reasonable doubt," as given by the judge to the jury, does not fully meet our approval. We think trial judges are not called upon to define the meaning of the words "reasonable doubt," but can safely rely upon the intelligence of jurors to give to plain, ordinary words their plain, ordinary meaning. But if, distrusting the intelligence of the jury to apply the meaning of such an ordinary word as "reasonable" to the evidence, or from any other meticulous motive, they deem it necessary to tell the jury the meaning of that word, they should not limit its application to the evidence in the case, but should extend its application to the want of evidence, to the prisoner's statement, to the credibility of the witnesses, or to any cause or circumstance connected with the case which might furnish a reasonable basis for a reasonable man to entertain a reasonable doubt. The charge on the subject of reasonable doubt, however, considered as a whole, could not, in our opinion, have misled the jury, or have caused any confusion in their minds on the subject; and the inapt definition of the judge, as to the meaning of a reasonable doubt, was not sufficient to justify the grant of a new trial.

3. The verdict is amply supported by the evidence, and the general grounds of the motion are without merit.

*Judgment affirmed. Russell, J., dissents from the ruling announced in the first division of the opinion.*