### 4098. KIRKSEY *v.* THE STATE.

1. The statutory provisions in reference to the making up of jury lists and the selecting and summoning of juries are in the main directory only. The question of the equalization and distribution of jury service concerns the public and the citizens generally more than it does an individual accused of crime. The fact that the jury commissioners may place in the grand-jury box a list of names containing more than two fifths. of the whole list of jurors selected by the commissioners, and that from this grand-jury box a grand jury is selected, impaneled, and sworn, which returns an indictment against one accused of crime, is no ground either for challenge to the array of the grand jury before indictment, or for quashing the indictment, it appearing that all of the grand jurors whose names were placed in the grand-jury box were selected from the jury list made up in the manner required by law, and that each of them was qualified to serve as such.
2. Where two or more persons conspire to commit, and actually engage jointly in the commission of a crime, the act of one is the act of all, and

the sayings and conduct of all of the conspirators pending the conspiracy, and in furtherance of it, are admissible in the trial of each of them.

3. Following numerous decisions of the Supreme Court, it is not error to charge that "the onus is on the accused to verify the alleged alibi, not beyond a reasonable doubt, but to the satisfaction of the jury. While the burden is placed upon the defendant to verify the truth of a defense of an alibi, it is not incumbent upon him to establish it by any greater degree of proof than to establish any other facts set up in his defense." This court declines to request the Supreme Court to review and overrule the decisions announcing the rule laid down in this instruction.

4. The evidence fully warranted the verdict, and no error of law was committed.

DECIDED MAY 7, 1912.

Indictment for assault with intent to murder; from Miller superior court—Judge Worrill. March 3, 1912.

*W. I. Geer,* for plaintiff in error.

*J. A. Laing, solicitor-general, R. R. Arnold,* contra.

POTTLE, J. The accused was convicted of the offense of assault with intent to murder one Coon Oliver. His motion for new trial having been overruled, he has sued out a bill of exceptions to this court, complaining of this judgment and also of the refusal of the court to sustain a challenge to the array of the grand jury, and a plea in abatement to the indictment, based upon the ground that the jury list from which the grand jury was selected exceeded two-fifths of the whole number of persons selected by the jury commissioners to serve as jurors.

1. The constitution of this State requires the General Assembly to provide "for the selection of the most experienced, intelligent, and upright men to serve as grand jurors.". Penal Code (1910), § 855. The statute passed in pursuance of this constitutional mandate provides that the jury commissioners shall revise the jury list from time to time, and select from the books of the tax-receiver upright and intelligent men to serve as jurors. The names of the persons so selected shall be placed on tickets, and from this number "a sufficient number, not exceeding two fifths of the whole number, of the most experienced, intelligent and upright men to serve as grand jurors," are to be chosen. Penal Code (1910), § 819. At common law grand jurors were selected, as well as summoned and returned, by the sheriff, but in most of the States there are statutory provisions prescribing the method of making up jury lists and selecting and summoning jurors. In many of

the States it is expressly declared by statute that the method prescribed for making up jury lists and selecting both grand and traverse jurors is directory only. See Head v. State, 44 Miss. 731; State v. Krug, 12 Wash. 288 (41 Pac. 126); State v. Fiddler, 23 R. I. 41 (49 Atl. 100); Huling v. State, 17 Ohio St. 583. But even in those States where the method of selecting jurors has not been expressly made directory by statute, it is generally held that mere irregularities in connection with the method of making up jury lists and selecting and summoning and impaneling jurors do not afford sufficient reason for quashing an indictment or setting aside a verdict of guilty. See 20 Cyc. 1306; Sage v. State, 127 Ind. 15 (26 N. E. 667); Commonwealth v. Brown, 147 Mass. 585 (18 N. E. 587, 1 L. R. A. 620, 9 Am. St. Rep. 736); Thomp. Trials, §§ 37 et seq.

In *Williams* v. *State,* 69 *Ga.* 12, the Supreme Court of this State questioned whether the mode of equalizing jury duty, which does not affect the impartiality of those summoned, is a proper matter for plea in abatement. In *Stevenson* v. *State,* 69 *Ga.* 68, it was held, "That thirty-two instead of thirty grand jurors were drawn, is not such an irregularity as would quash an indictment, much less arrest a verdict." In *Roby* v. *State,* 74 *Ga.* 812, the court said: "Where the law is substantially complied with, and upright and intelligent men form the grand jury, whose duty it is to charge crime, not to try parties in the last resort, the courts should not set aside proceedings by such an inquest on mere technicalities." In *Turner* v. *State,* 78 *Ga.* 174, it was ruled, "the provisions of the code as to the number of grand jurors to be drawn is directory and not mandatory upon the court." The statute in reference to the number of grand jurors to be drawn provides that the judge shall cause to be drawn "not less than eighteen nor more than thirty names to serve as grand jurors." Penal Code (1910), § 823. In *Governor* v. *State,* 5 *Ga. App.* 357 (63 S. E. 241), this court had occasion to discuss the general subject, and held that the statute regulating the drawing of jurors was generally to be regarded as directory, and that where there had been a substantial compliance with legal requirements, any irregularities in the drawing which could not have affected the right of trial by a fair and impartial jury furnished no ground for challenging the array. The question of distribution and equal-

ization of jury service, and of the number of jurors to be selected, are questions which concern the public and the citizens generally more than they do a particular individual who may be charged with crime.

There is no pretense in this case that the grand jury which returned the bill against the accused was not an impartial grand jury. The constitution of this State guarantees to one accused of crime a speedy trial by an impartial jury. There is no claim that a single person who served on the grand jury was not a qualified grand juror. The sole contention is that, because the jury commissioners happened to put into the grand jury box 12 or 15 more names than made up an aggregate of two fifths of the whole list of jurors in the county, the indictment returned by the grand jury in this case was fatally defective and should have been quashed, upon the ground that it was not found by a qualified grand jury. The statute of this State says that the judge shall not draw more than 30 names from the grand-jury box to serve as grand jurors, and yet the Supreme Court has twice held that this was directory merely, and that it afforded the accused no cause for complaint, though more than 30 names were drawn from the box and were summoned to serve as grand jurors. Irrespective of other considerations, the principle of these decisions would seem to be controlling here. The accused has not been substantially injured. His case was investigated by a qualified grand jury and an impartial grand jury, so far as the record discloses. It may be that the judge could, and that upon a proper showing it would be his duty to mandamus the jury commissioners and compel them to re-revise the jury list in accordance with the direction contained in the statute, but certainly the mere accidental, or even intentional, insertion in the grand-jury box of a few more names than the statute directed would not have the effect of vitiating every indictment returned by a grand jury selected from this list. We think the judge was clearly right in overruling the challenge to the array before indictment, and in refusing to quash the indictment after it was found.

2. Complaint is made, in the motion for a new trial, of the admission of evidence in reference to the conduct and sayings of other persons, not on trial, and of the record of the convictions of such persons of assault with intent to murder the prosecutor, in

10

connection with the same transaction for which the accused was indicted. The evidence shows that the accused and these other persons, together with several others, went one night to the house of an inoffensive old negro, took him out in the public road in his night clothes, shot him a number· of times with pistols, and beat him over the head and body with a trace-chain; after which they went back to the house and got the prosecutor's wife and severely whipped her. They left the old negro dead, as they supposed, in the road, where he remained all night until he was rescued next morning and carried to a physician for treatment. The prosecutor testified that when these men came to his house, he inquired their reason for attacking him, and the reply they gave was that, while they recognized that he was a good negro, at the same time they were not going to permit negroes to live in that neighborhood, and that they proposed to kill him on the night in question, and kill the others who resided in that community, from time to time, as the opportunity presented itself. We are at a loss to understand how it can be contended that the sayings and conduct of these conspirators were not admissible in evidence. They formed the conspiracy to kill this old man, they went to his house together for this purpose, and all of them participated in the criminal act. Under such circumstances the act of one was the act of all, and each is equally responsible for the conduct of all. For the same reason it is very clear that the record of the conviction of these conspirators was also admissible in evidence.

3. The court charged as follows: "Alibi as a defense involves the impossibility of the defendant being present at the scene of the offense at the time of its commission, and the range of the evidence in respect to time and place must be such as reasonably to exclude the possibility of presence. The onus is on the accused to verify the alleged alibi, not beyond a reasonable doubt, but to the satisfaction of the jury. While the burden is placed upon the defendant to verify the truth of a defense of an alibi, it is not incumbent upon him to establish it by any greater degree of proof than to establish any other fact set up in his defense." Counsel for the plaintiff in error concede that this charge is in harmony with a number of decisions of the Supreme Court, which they cite in their brief. They argue, however, that these decisions are wrong, and base their contention upon a dictum of Judge Powell

in *Smith* v. *State, 3 Ga. App.* 806 (61 S. E. 739), to the effect that "in truth the burden of proving an alibi is never on the defendant." Upon the authority of this dictum counsel request us to certify this question to the Supreme Court, with a view to having that court review and overrule its numerous decisions to the contrary of the dictum just referred to. We must decline to grant this request. The proposition is settled by a long line of Supreme Court decisions, and we would not be justified in asking that court to overturn and set aside a rule of evidence which has been in force in this State from the time of the 34th *Ga.* down to the present time. Nor have we any reason to believe that that court would comply with the request if we made it.

4. Other complaints are made of extracts from the charge of the court, but the assignments of error are clearly without merit and do not require any elaborate discussion. The evidence was abundantly sufficient to show the guilt of the accused. The crime was an atrocious one, absolutely without mitigation, and it is creditable to the white jurors of Miller county that they so regarded it and promptly convicted each one of these conspirators of the highest crime charged in the indictment. There is no merit in any of the complaints made in the motion for new trial.

*Judgment affirmed.*