71629. ROBINSON v. THE STATE.
(347 SE2d 667)

BEASLEY, Judge.

Appellant was tried by a jury and convicted of the August 25, 1983 armed robbery (OCGA § 16-8-41) and kidnapping (OCGA § 16-5-40) of a convenience store employee. His motion for new trial was denied and he appeals.

1. Appellant first argues that his conviction must be overturned because the array of the grand jury which returned his indictments did not meet the requirements of OCGA § 15-12-40 (b) (1).

At the time of the indictments, December 20, 1983, OCGA § 15-12-40 (b) (1) provided: "In any county utilizing a plan for the selection of persons to serve as jurors by mechanical or electronic means . . . , the board of jury commissioners shall select from the jury list any number of the most experienced, intelligent, and upright citizens, not less than one-third of the whole number (of Traverse Jurors), but not to exceed 5,000 jurors, to serve as grand jurors." It is uncontested that this provision was not complied with. Apparently the jury commissioners were following subsection (a) (2) of the statute instead; it governs non-mechanical means of selection. The record reflects that although there were 7,161 traverse jurors, there were only 362 selected to serve as grand jurors, well below the 2,397 (7,191 x ⅓) then needed to comply with the "at least one-third" language.[1]

Noncompliance with OCGA § 15-12-40, however, does not mandate a reversal of appellant's convictions. Citing *Hulsey v. State*, 172 Ga. 797, 808 (159 SE 270) (1931), the court in *Franklin v. State*, 245 Ga. 141, 146 (1) (263 SE2d 666) (1980), explained: " 'In *Rafe v. State*, 20 Ga. 60, it was said: "The statutes for selecting jurors, drawing and summoning them, form no part of a system to procure an impartial jury to parties. They establish a mode of distributing jury duties among persons in the respective counties . . . they provide for rotation in jury service; they prescribe the qualifications of jurors, and the time and manner of summoning them, and are directory to those

---

[1] The number would now be within the statutory qualification, as it was amended in 1985. Ga. L. 1985, p. 1511, § 2.

whose duty it is to select, draw, and summon persons for jurors." . . . [I]n *Pollard v. State*, 148 Ga. 447-453 (96 SE 997) . . . it was said: "It is . . . said that statutes regulating the selection, drawing, and summoning of jurors are intended to distribute jury duties among the citizens of the county, provide for rotation in jury service, and are merely directory. This is undoubtedly true. [Cit.] Obviously, however, a disregard of the essential and substantial provisions of the statute will have the effect of vitiating the array. In the *Rafe* case, supra, it was ruled that such statutes, that is, statutes regulating the selection, drawing, and summoning of jurors, 'are no part of a regulation to secure to parties impartial juries.' " ' "

Just as the court in *Franklin*, supra at 147, concluded, we also "do not find here such disregard of the essential and substantial provisions of the statute as would vitiate the arrays." The failure to draw the larger number of grand jurors directed by the statute did not deprive defendant of a fair trial by an impartial jury nor of a fair consideration by an impartial grand jury as to whether an indictment should issue. Defendant does not claim that it did, but merely that it happened and was contrary to the statute's directive. "There is no pretense in this case that the grand jury which returned the bill against the accused was not an impartial grand jury. The constitution of this State guarantees to one accused of crime a speedy trial by an impartial jury. There is no claim that a single person who served on the grand jury was not a qualified grand juror . . . [Appellant's] case was investigated by a qualified grand jury and an impartial grand jury, so far as the record discloses." *Kirksey v. State*, 11 Ga. App. 142, 145 (1) (74 SE 902) (1912).

2. Appellant next asserts that the pre-trial identification procedures were impermissibly suggestive and gave rise to a substantial likelihood of irreparable misidentification and required suppression of the in-court identification, pursuant to the mandates of the federal constitution, as construed in *Simmons v. United States*, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968). He does not invoke the state constitution, which we would have addressed first as the proper sequence of judicial review. See *Massachusetts v. Upton*, 466 U. S. 727 (104 SC 2085, 80 LE2d 721) (1984), concurring opinion of Stephens, J.

Within hours after her abduction, the victim participated in a photographic lineup where she selected appellant's photo from between 600 to 900 photos of black men. She then assisted the police in developing a composite of her assailant, but she was never fully satisfied with the results because the hair was not accurately depicted in the composite. The following day the victim was shown a more recent color photograph of appellant and she again identified him as the offender.

" 'The threshold inquiry is whether the identification procedure

was impermissibly suggestive. Only if it was, need the court consider the second question: whether there was a substantial likelihood of irreparable misidentification. [Cits.]' " *Brown v. State*, 171 Ga. App. 70, 72 (3) (318 SE2d 498) (1984).

(a) The initial photo identification. As the procedure followed here was not impermissibly suggestive, we need not address the second question. The victim was given five or six books of mug shots, each book containing about 150 photos. After scanning four to five books, she identified appellant's photo as that of the kidnapper. She was then encouraged to look through additional books to be certain of her selection. There is nothing in the record to support appellant's assertion that "[u]ndoubtedly the police put pressure on the victim to identify the alleged assailant as someone pictured in their 'bolo books' rather than someone who was not pictured." The evidence reflects no suggestion was made that the photo of her kidnapper was in the collection of photos, nor was any suggestion made as to which photo she should select.

Appellant's contention that the victim's photo selection "may have been random as she was unable to give a description adequate to furnish a completely accurate composite drawing subsequent to . . . [the identification]" is sheer conjecture without evidence or a rational basis for support. The subsequent attempt to obtain a composite which matched the victim's description of her attacker is not relevant to whether the photo identification procedure was impermissibly suggestive. Her inability to verbally convey the picture in her mind, or the artist's inability to "catch" that picture as described by her in his own mind, or his inability to reduce the picture he received in his mind to paper, may just as easily be the explanation. Such would not affect her selection of the photo or her identification of appellant.

(b) The single-photo identification. The state concedes that this second identification procedure was "in all probability impermissibly suggestive." We therefore address whether there was a substantial likelihood of irreparable misidentification.

" ' . . . "(T)he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." [Cit.]' " *Johnson v. State*, 169 Ga. App. 943, 944 (1) (315 SE2d 667) (1984).

The victim had ample opportunity to view the offender. Appellant first came into the well-lit store at about 2:00 a.m. and remained for about two to three minutes. He then returned two hours later to commit the robbery and abduction. The victim paid close attention to

the robber and was able to get a good look at him while in the store. Appellant then forced the victim into her car where they spent about one hour together. The victim was in very close proximity to him during this time, and she looked at him frequently and was again able to get a good look at him. The victim gave a description of the offender to police and aided in compiling a composite picture of her assailant. The single photo identification procedure took place on the day following her abduction and *after* the victim had already identified appellant's photo from between 600 and 900 photos. Thus, upon a review of the evidence, we conclude that there is no substantial likelihood of misidentification.

3. Appellant last enumerates that pre-trial confrontations between the victim and appellant on the day of the committal hearing and on the day of the trial were impermissibly suggestive and gave rise to a substantial likelihood of irreparable mistaken identification, thereby tainting the subsequent in-court identification in violation of federal constitutional mandates. *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972). He urges the same "totality of the circumstances" test for chance encounters as that case applied to show up identification procedures.

(a) Appellant contends that prior to the committal hearing, the victim observed several prisoners including appellant wearing handcuffs and shackles being led down a courthouse hallway toward the hearing room.

The victim testified that although she observed eight or ten prisoners being escorted down the hall, she did not see appellant. She stated that she never came closer than approximately thirty feet from the group and that she did not come face to face with any of the individuals. No evidence was introduced to the contrary. Thus the claim is factually an empty one.

(b) Appellant asserts that a "chance encounter" outside the courtroom prior to trial, when he was brought up from the jail and passed her where she happened to be waiting outside the courtroom, tainted the victim's in-court identification. There is no evidence that anyone pointed him out to her or suggested to her that he was the defendant in her case. As the court held in *McClesky v. State*, 245 Ga. 108, 110 (2) (263 SE2d 146) (1980), cited by appellant, so we hold here: "The chance viewing of the appellant prior to trial . . . was no more suggestive than seeing him . . . seated at the defense table as each witness comes in to testify. We conclude that the chance viewing of the appellant immediately prior to trial by . . . state's witnesses was not impermissibly suggestive."

We find no federal constitutional error in the admission of the in-court identification.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

*Susan C. Jankowski, Charles D. Chastain,* for appellant.
*Harry D. Dixon, Jr., District Attorney, Richard E. Currie, Assistant District Attorney,* for appellee.