307 Ga. 351
FINAL COPY

S19A0557.  THE STATE v. TOWNS.

BLACKWELL, Justice.

On March 16, 2015, a Telfair County grand jury indicted Ronnie Adrian Towns, charging him with murder and armed robbery. Two years later, Towns filed a motion to dismiss the indictment, alleging that the grand jury was unlawfully constituted because some of the grand jurors were not selected randomly. Following an evidentiary hearing, the trial court agreed that two of the grand jurors were not selected randomly, and it dismissed the indictment. The State appeals,[1] and we affirm.[2]

---

[1] The State brought this appeal pursuant to OCGA § 5-7-1 (a) (1), which authorizes the State to appeal from "an order, decision, or judgment setting aside or dismissing any indictment[.]"

[2] Towns also moved to dismiss the indictment on another ground — he claimed that the master jury list for Telfair County is not sufficiently inclusive of certain populations and is not, therefore, representative of the county as a whole — but the trial court rejected that alternative ground. In its brief to this Court, the State asks us to review not only the ruling that led the trial court to dismiss the indictment — its determination that some of the grand jurors were not selected randomly — but also its rejection of the alternative ground. The

1. The record shows that 50 prospective jurors were summoned to appear at 8:50 a.m. on March 16 for service on the grand jury. Fewer than 16 prospective grand jurors, however, appeared on time and ready to serve. Half of the summoned jurors had been excused or had been given deferrals. The others simply did not show up. Because the presence of 16 jurors is essential to empanel a grand jury, see OCGA § 15-12-61 (a), the presiding judge directed the sheriff to attempt to locate the jurors who had failed to appear. Unsure whether the efforts of the sheriff would prove successful, the presiding judge also directed the clerk to supplement the number of prospective grand jurors with persons who had been summoned to appear for service as petit jurors, a procedure that is authorized by OCGA § 15-12-66.1.

---

State, however, has no standing to complain on appeal about a ruling that in no way aggrieved the State. See <u>Brown v. City of Atlanta</u>, 66 Ga. 71, 76 (1) (1880) ("When a plaintiff in error brings a case here he must show error which has hurt him. This court is not an expounder of theoretical law, but it administers practical law, and corrects only such errors as have practically wronged the complaining party."). See also <u>Hamilton State Bank v. Nelson</u>, 296 Ga. 572, 573 (769 SE2d 317) (2015) (where alleged error "could not have harmed" appellant, appellant "cannot be heard to complain about [it]"). Towns has not sought appellate review of the rejection of his inclusivity claim, and we decline to review it at the behest of the State in this appeal.

2

One hundred and fifty prospective jurors had been summoned to appear on the following day for service as petit jurors. With the assistance of her chief deputy, the clerk examined the list of prospective petit jurors, identified four possible candidates for service on the grand jury, and reached out to those four prospective petit jurors. Two were unavailable to report on March 16. But the other two prospective petit jurors — T. S. and B. W. — were available and agreed to report immediately for service on the grand jury.

By the time T. S. and B. W. reported, several of those summoned for service on the grand jury who initially failed to report had appeared, on their own or at the behest of the sheriff. Having secured the attendance of 23 prospective grand jurors — 21 jurors originally summoned for service on the grand jury, plus T. S. and B.W. — the trial court empaneled the grand jury on March 16. T.S. was chosen as the foreperson. That same day, 22 of the grand jurors — including both T. S. and B. W. — heard the evidence against

3

Towns, and the grand jury returned a true bill of indictment.[3]

Towns filed a motion to dismiss the indictment, alleging that T. S. and B. W. were not chosen at random to serve on the grand jury. The trial court conducted an evidentiary hearing in August 2018, at which the clerk and chief deputy clerk both testified. The clerk explained that, when asked to select some persons summoned for service as petit jurors to supplement the number of persons available to serve on the grand jury, she based her selections on her assessments of whether she already had the information necessary to readily make contact with particular prospective jurors and whether the prospective jurors likely would be available to report immediately. Those assessments were predicated on the personal knowledge of the clerk and her staff. T. S. was known to the chief deputy clerk because he had appeared at the courthouse on the morning of March 16 to seek a deferral of his service as a petit juror, telling the chief deputy clerk that he had a conflict on March 17. B.

---

[3] It appears that one of the empaneled grand jurors is related to Towns and did not, therefore, participate in the consideration of his case.

W., on the other hand, was previously known to the clerk as a local businessman. The clerk knew how to contact both T. S. and B. W., and based on her knowledge of their circumstances, she believed that both might be available to report immediately for service on the grand jury.

Following the hearing, the trial court found that neither T. S. nor B. W. was chosen at random to serve on the grand jury:

> While the Clerk of Court did not have any nefarious intent in selecting [T. S.] and [B. W.] . . . to serve on the grand jury, her reasoning of selecting those individuals that she knew, could contact quickly, and who were most likely available to serve[ ] did have the effect of destroying the randomness of the grand jury. While both [T. S.] and [B. W.] were randomly selected from the master jury list for inclusion on the traverse jury list, they were not randomly selected to serve on the grand jury. The Clerk of Court chose [T. S.] and [B. W.] purposefully and not at random . . . .

Based on these findings, the trial court granted the motion to dismiss the indictment, and the State appeals.

2. As we noted earlier, OCGA § 15-12-66.1 authorizes a court to select persons who have been summoned for service as petit jurors to supplement the number of persons summoned to appear for

service on the grand jury when necessary to secure the attendance of enough jurors to empanel a grand jury. Section 15-12-66.1 requires, however, that the petit jurors selected to serve on the grand jury be chosen *randomly*:

> When from challenge or from any other cause there are not a sufficient number of persons in attendance to complete the empaneling of grand jurors, the presiding judge shall order the clerk to *choose at random* from the names of persons summoned as trial jurors a sufficient number of prospective grand jurors necessary to complete the grand jury. . . .

OCGA § 15-12-66.1 (emphasis added). The State argues that T. S. and B. W. were selected "at random." The trial court disagreed, and so do we.

Like most words, "random" is a word that can vary somewhat in meaning when used in different contexts. When used in a colloquial sense, "random" ordinarily denotes the absence of any "plan, purpose or pattern." United States v. Kotrlik, 465 F2d 976, 977 (9th Cir. 1972) (addressing "random" selection of Selective

6

Service registrants for military service).[4] But when "random" is used in a strict statistical sense, it commonly is understood to refer to the results of a selection process in which each candidate for selection has an equal probability of being chosen. See <u>Smirnov v. Clinton</u>, 806 FSupp.2d 1, 15 (D.D.C. 2011) (in context of statute requiring random selection of immigration visa lottery winners, "random" means "governed by or involving equal chances for each of the actual or hypothetical members of a population" (punctuation and footnote omitted)).[5] Even if "random" is used only in a more colloquial sense in OCGA § 15-12-66.1 — that is, even if the statute does not demand a selection process in which each petit juror has a *perfectly* equal chance of being chosen to serve on the grand jury, cf. <u>United States</u>

---

[4] Accord American Heritage Dictionary of the English Language, p. 1448 (4th ed. 2000) ("Having no specific pattern, purpose, or objective . . . ."); 2 The New Shorter Oxford English Dictionary, p. 2474 (1993 ed.) ("Not sent or guided in a special direction; having no definite aim or purpose; made, done, occurring, etc., without method or conscious choice.").

[5] Accord American Heritage Dictionary of the English Language, supra at p. 1448 ("Of or relating to an event in which all outcomes are equally likely . . . ."); 2 The New Shorter Oxford English Dictionary, supra at p. 2474 ("Governed by or involving equal chances for each of the actual or hypothetical members of a population . . . .").

v. Butts, 514 FSupp. 1225, 1234 (M.D. Fla. 1981) (concerning random selection of jurors) — the provision that petit jurors must be chosen "at random" for the grand jury means at the very least that the clerk must employ a selection process that produces choices that are substantially unpredictable and not meaningfully susceptible to the conscious influence of the clerk or other court personnel.

In this case, it is true that the persons summoned for service as petit jurors were selected at random from the master jury list. But in selecting T. S. and B. W. from that random list to serve on the grand jury, the clerk relied on her personal knowledge of the prospective petit jurors, her own assessment of the extent to which she had the information necessary to contact them, and her estimate of the likelihood that they would be available to report immediately. Those selections were not "random" in any sense of the word.[6] The

---

[6] We agree with the trial court that the record suggests no "nefarious intent" on the part of the clerk or her staff. That does not change the fact, however, that the clerk did not choose T. S. and B. W. "at random." We also note that the clerk was put into an especially difficult position when she was asked on March 16 to choose persons summoned for service as petit jurors to supplement the number of persons summoned for service as grand jurors,

8

trial court was right to conclude that T. S. and B. W. were not "cho[sen] at random" for service on the grand jury and were not, therefore, selected as required by OCGA § 15-12-66.1.[7]

3. A violation of an "essential and substantial" provision of the statutes governing the selection of juries vitiates the array, and with respect to an irregular grand jury, the remedy for such a violation is the dismissal of an indictment returned by the grand jury. See Harper v. State, 283 Ga. 102, 103 (1) (657 SE2d 213) (2008). Although the State does not dispute that the randomness requirement of OCGA § 15-12-66.1 is an "essential and substantial" provision,[8] the dissent does, and so, we will consider whether the randomness requirement is "essential and substantial." To begin, we note that the dissent fails to articulate a meaningful standard by

---

notwithstanding that no persons had been summoned to appear at the courthouse for service as petit jurors until the following day. The record does not disclose why the empaneling of the grand jury was not simply deferred until the next day, when as many as 150 prospective petit jurors were expected to report to the courthouse.

[7] We note the agreement of our dissenting colleagues on this point.

[8] The State also does not appear to have disputed it below.

9

which "essential and substantial" provisions of the jury selection statutes may be differentiated from those provisions that are neither essential nor substantial. This shortcoming is understandable, considering that this Court never before has attempted to articulate a standard that clearly marks the line between the provisions of jury selection statutes that are "essential and substantial" and those that are not. But if "essential and substantial" has any meaning — and it must have meaning, inasmuch as it is the test that we have applied consistently for more than 100 years, see Pollard v. State, 148 Ga. 447, 453 (96 SE 997) (1918) — there must be a line. In the absence of an articulated standard to mark the line, the best way to find the line is an examination of how we have applied the "essential and substantial" test in prior cases, especially cases like this one that involve the selection of a juror who likely would not otherwise have been chosen for the array.

Regardless of where the line may be found in other contexts, our examination of the cases leads us to conclude that, to the extent that a violation of the jury selection statutes affects the identity of

10

the persons selected for the array from the universe of persons eligible to serve, it is a violation of an "essential and substantial" provision. In *every* case in which we have confronted a violation of a jury selection statute that impacted *who* was chosen for the array — that is, in every case in which there was good reason to doubt that a particular juror would have been selected for the array without the violation — we consistently have deemed it a violation of an "essential and substantial" provision of the statute and held that relief was warranted.[9] We have done so even when the violation was

---

[9] For our purposes here, we need not address cases in which this Court identified other grounds that warranted relief. See, e.g., Yates v. State, 274 Ga. 312, 314-316 (553 SE2d 563) (2001); Joyner v. State, 251 Ga. 84, 85-86 (3) (303 SE2d 106) (1983); Blevins v. State, 220 Ga. 720, 725 (4) (141 SE2d 426) (1965). Likewise, we need not discuss the cases involving very different circumstances in which the Court has held no relief was warranted. See, e.g., Johnson v. State, 293 Ga. 641, 642-643 (2) (748 SE2d 896) (2013); Walker v. Hagins, 290 Ga. 512, 515 (722 SE2d 725) (2012); Young v. State, 290 Ga. 392, 393-395 (2) (721 SE2d 855) (2012); Bryant v. State, 288 Ga. 876, 882 (6) (708 SE2d 362) (2011); Foster v. State, 288 Ga. 98, 101 (2) (b) (701 SE2d 189) (2010); Humphreys v. State, 287 Ga. 63, 67 (2) (b) (694 SE2d 316) (2010); State v. Parlor, 281 Ga. 820, 820-821 (642 SE2d 54) (2007); Al-Amin v. State, 278 Ga. 74, 80 (7) (597 SE2d 332) (2004); Rhode v. State, 274 Ga. 377, 379 (2) (552 SE2d 855) (2001) (providing dictum); Presnell v. State, 274 Ga. 246, 248 (2) (551 SE2d 723) (2001); Hendrick v. State, 257 Ga. 17, 17-18 (2) (354 SE2d 433) (1987); Pope v. State, 256 Ga. 195, 197 (1) (c) (345 SE2d 831) (1986); Franklin v. State, 245 Ga. 141, 143-147 (1) (263 SE2d 666) (1980); Cobb v. State, 244 Ga. 344, 347-348 (2) (d) (260 SE2d 60) (1979); Burney v. State, 244 Ga. 33, 37-

11

not systemic and did not affect many jurors. See, e.g., <u>Harper</u>, 283 Ga. at 103-105 (1) (holding that dismissal of an indictment is warranted where "someone not on the grand jury list served on the grand jury"). See also <u>Turner v. State</u>, 78 Ga. 174, 179-180 (1886) (denying relief on factual grounds but indicating in dictum that the service of one person not actually selected to be summoned would warrant relief). We also have done so in the absence of any bad faith or improper motive behind the irregular selection of a juror. See, e.g., <u>Harper</u>, 283 Ga. at 103-105 (1); <u>Pollard</u>, 148 Ga. at 453 (granting relief despite the argument that "the controlling question is, did the accused have a fair trial by an impartial jury?"); <u>Bridges v. State</u>, 103 Ga. 21, 32-33 (29 SE 859) (1897) (noting no improper motives); <u>Turner</u>, 78 Ga. at 177, 179-180 (noting circumstances, before resolving the matter on factual grounds, showing that any

---

38 (3) (257 SE2d 543) (1979); <u>McHan v. State</u>, 232 Ga. 470, 471 (3) (207 SE2d 457) (1974); <u>Haden v. State</u>, 176 Ga. 304, 307 (168 SE 272) (1933); <u>Hulsey v. State</u>, 172 Ga. 797, 805-809 (159 SE 270) (1931); <u>Turner v. State</u>, 78 Ga. 174 passim (1886) (denying relief on one ground and providing dictum on another); <u>Roby v. State</u>, 74 Ga. 812 passim (1885); <u>Stevenson v. State</u>, 69 Ga. 68, 74 (1882); <u>Rafe v. State</u>, 20 Ga. 60, 64 (1856).

failure to summon the person actually selected would have been through mere inadvertence); <u>Boon v. State</u>, 1 Ga. 631, 636 (1846) (noting the fact that courts sometimes exercise "praiseworthy enthusiasm" but that relief still may be warranted). And we have done so even in the absence of any showing that the violation, in fact, impacted the overall representativeness of the array. See, e.g., <u>Harper</u>, 283 Ga. at 103-105 (1); <u>Bridges</u>, 103 Ga. at 32-33; <u>Turner</u>, 78 Ga. at 179-180 (noting no exception, in providing dictum, based on the fact that only one grand juror might be at issue). We have found not one case among our precedents – and the parties have not pointed us to one – in which we have denied relief for a violation of the jury selection statutes that likely resulted in the selection of a juror who otherwise would not have been chosen for the array.[10]

The dissent accurately notes that inclusivity and randomness

---

[10] We cannot quarrel with the proposition that every one of our prior cases might be factually distinguished from this case on some material ground, inasmuch as no case exactly like this one appears to have previously come before the Court. But these comparable precedents show a pattern that lights the way for our application of the "essential and substantial" standard in this case.

are the "twin pillars" of our modern statutory scheme for the selection of jurors, but it discounts the significance of the "at random" requirement of OCGA § 15-12-66.1. The essential gist of the modern scheme is that jury representativeness and impartiality are best guaranteed by inclusivity in the identification of the universe of persons eligible to serve and by randomness in selecting arrays from that universe. It is true that OCGA § 15-12-66.1 does not concern the selection of grand jurors in the ordinary course; it applies only when the usual selection process has failed to produce the appearance of a sufficient number of prospective jurors to empanel a grand jury. But the limited scope of the statute does not mean that it is not an "essential and substantial" part of the overall jury selection scheme. Cf. Boon, 1 Ga. at 636 (violation of law concerning selection of additional jurors when an insufficient number of summoned jurors have appeared warranted relief). Moreover, we note that the General Assembly in 2014 *specifically* amended the jury selection statutes to add the "at random" requirement to OCGA § 15-12-66.1, see Ga. L. 2014, p. 862, § 13

14

(amending OCGA § 15-12-66.1 to add "at random"), three years after its adoption of most of the other provisions of our modern scheme for selecting juries. See Ga. L. 2011, p. 59. That suggests that the General Assembly thought it important to require that *all* grand jurors be selected randomly. See also OCGA § 15-12-1 (2) (defining "choose" and "chosen" for purposes of the jury selection statutes as "the act of *randomly* selecting potential jurors" (emphasis supplied)).[11],[12] We are not inclined to disagree with that assessment.

A grand jury is randomly selected only to the extent that all of

[11] For much of our history, Georgia used a "key man" system to select grand jurors, whereby jurors were screened by court personnel to ensure that the grand jury was composed of "the most experienced, upright, and intelligent persons" available to serve. See Estes v. State, 232 Ga. 703, 707 (2) (208 SE2d 806) (1974) (noting the constitutional and statutory basis for the Georgia grand jury selection system); Mikell v. State, 62 Ga. 368, 369 (1879) (same). But Georgia now has left the "key man" system behind. See Ga. L. 2011, p. 59, § 1-26 (amending OCGA § 15-12-60 to omit the historical language regarding "the most experienced, upright, and intelligent persons"). As explained above, the modern replacement for the "key man" system relies instead on randomness.

[12] The dissent points to a 2015 amendment of OCGA § 15-12-60 (d) — to add a provision that the source of *certain* ineligible jurors on a grand jury is no ground to quash an indictment — as evidence that quashing an indictment is a drastic remedy. Maybe so, but it also is evidence that the General Assembly knows exactly how to deem a violation irremediable by a motion to quash. The General Assembly made no such provision with respect to the randomness requirement of OCGA § 15-12-66.1.

its members were randomly selected. Even an occasional, limited, and well-intentioned violation of the randomness requirement in the statute governing the summoning of additional grand jurors undercuts a key feature of the modern scheme for selecting juries. Especially in light of our prior decisions on this subject, we cannot say that such a violation is anything less than the violation of an "essential and substantial" provision of the jury selection statutes. Accordingly, on the facts before us, the trial court did not err when it dismissed the indictment as a remedy for the violation of the randomness requirement that occurred in this case.

Judgment affirmed. All the Justices concur, except Boggs and Ellington, JJ., who dissent.

ELLINGTON, Justice, dissenting.

I agree with the majority that two of the twenty-two grand jurors who returned the indictment against Towns were not chosen at random, as that word is defined in the dictionary. However, I do not believe that the clerk of court's method in this case for securing grand jurors from the list of persons who had been summoned to appear for service as trial jurors constituted a disregard of the "essential and substantial" provisions of the new statutory scheme governing jury selection such that it vitiated the array. For that reason, I respectfully dissent.

> The statutes for selecting jurors, drawing and summoning them, form no part of a system to procure an impartial jury to parties. They establish a mode of distributing jury duties among persons in the respective counties; they provide for rotation in jury service; they prescribe the qualifications of jurors, and the time and manner of summoning them, and are directory to those whose duty it is to select, draw, and summon persons for jurors. . . . Obviously, however, a disregard of the essential and substantial provisions of the statute will have the effect of vitiating the array.

(Citations and punctuation omitted.) *Franklin v. State*, 245 Ga. 141, 146 (1) (263 SE2d 666) (1980).

17

The General Assembly adopted a new statewide system of jury selection in 2011. See the Jury Composition Reform Act of 2011, Ga. L. 2011, p. 60. The twin pillars of the new statutory scheme are inclusivity and randomness: inclusivity of the county master jury lists with respect to the county population age 18 years or older eligible to serve as jurors, and randomness in the selection of grand jurors and trial jurors summoned from that list to appear for service on a particular date. The statutory authorization to pull supplemental grand jurors from among those already summoned as trial jurors when necessary to enable the empaneling of a grand jury is not a central component of the overall statutory scheme for securing fairly representative and non-discriminatory grand juries. To the contrary, it is a minor adjunct to the statutory scheme to be used only on an as-needed basis. Thus, while it is true that OCGA § 15-12-66.1 requires the clerk when pulling supplemental grand jurors to do so "at random" from the randomly generated list of those already summoned as trial jurors, in my view, this added layer of randomness is not such an "essential and substantial" component of

18

the new statutory scheme for jury selection that a violation requires the invalidation of every indictment issued by the resulting grand jury.[13] See *Franklin v. State*, 245 Ga. at 146-147 (1).

I disagree with the majority that a violation of an "essential and substantial" provision of the statutes for selecting and summoning individuals for jury service is one that "affects the identity of the persons selected for the array from the universe of persons eligible to serve." (Maj. op. at 355.) Such a standard is too broad, given that one of the basic purposes of the jury selection

---

[13] Although the General Assembly amended OCGA § 15-12-66.1 to add the "at random" requirement three years after its adoption of most of the other provisions of our modern scheme for selecting juries, I am loath to speculate as to the significance of that particular phrase when the General Assembly made so many other substantial changes to this Code provision. Prior to the enactment of Ga. L. 2014, p. 862, § 13, the Code provision read: "On and after July 1, 2012, when from challenge or from any other cause there are not a sufficient number of persons in attendance to complete the panel of jurors, the clerk shall choose prospective trial jurors from the county master jury list and summon the jurors so chosen." It is entirely possible that the General Assembly's choice of the phrase "to choose at random from the names of persons summoned as trial jurors" was meant to be the equivalent of requiring the clerk "to choose" additional grand jurors from the "county master jury list," a process which was already required to be random. See former OCGA § 15-12-40.1 (e) (2011) ("On and after July 1, 2012, in each county, upon court order, the clerk shall choose a random list of persons from the county master jury list to comprise the venire.").

statutes is to identify individuals who are eligible to serve as jurors.[14] Rather, I think "essential and substantial" provisions are those that protect the core values inherent in our jury selection statutes. "Essential and substantial" has a plain meaning. "Essential" means "inherent"[15] and "substantial" means "of considerable importance."[16] In the context of selecting jurors for the array or for the grand jury, a violation of an essential and substantial provision is a violation that undermines the integrity of the jury selection process by injecting into that process those defects

---

[14] Nor am I surprised that, in every case where there was an "essential and substantial" violation of a jury selection statute, the violation affected who was called to serve as a juror. While the latter may logically flow from the former, it does not necessarily define the former.

[15] See Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/essential (defining essential as "inherent" and "of the utmost importance") (website last accessed October 16, 2019); Cambridge Dictionaries Online, http://dictionary.cambridge.org/us/dictionary/english/essential (website last accessed October 16, 2019) (defining "essential" as "extremely important or necessary").

[16] See Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/substantial (defining "substantial" as "important, essential") (website last accessed October 16, 2019); Cambridge Dictionaries Online, http://dictionary.cambridge.org/us/dictionary/english/substantial (website last accessed October 16, 2019) (defining "substantial" as "large in size, value, or importance").

expressly forbidden in the array or, as in this case, the grand jury. Such a violation, therefore, would act to undermine the inclusivity or randomness of the array,[17] would result in the seating of a juror who was not eligible to serve,[18] or would act to deprive the defendant of a right that he was due.[19]

In this case, the list of 150 prospective trial jurors from which T. S. and B. W. were chosen had been created as required by law, and the trial jurors had already been summoned to appear on the

---

[17] See, e.g., *Yates v. State*, 274 Ga. 312, 315-316 (2) (553 SE2d 563) (2001) (The trial court was authorized to excuse potential jurors based on a determination that jury service would pose an undue hardship, but the lack of inquiry into proffered medical excuses meant there was no determination of undue hardship, resulting in an abuse of discretion. This error, affecting the fair cross-section of the jury array, required a new trial.).

[18] See, e.g., *Harper v. State*, 283 Ga. 102, 103-105 (1) (657 SE2d 213) (2008) (The court vacated the judgment, in part, with regard to the issue of whether the wrong person served on the grand jury and remanded the case to the trial court for a ruling on that issue.).

[19] See, e.g., *Joyner v. State*, 251 Ga. 84, 85-86 (3) (303 SE2d 106) (1983) (The court found that the excusal of jurors by the sheriff was not authorized by statute. This violated the integrity of the jury selection process and constituted an alteration of the array of traverse jurors to such extent as to deprive defendant of her proportional share of peremptory strikes under OCGA § 15-12-165); *Boon v. State*, 1 Ga. 631, 635-636 (1846) (The court held that it was an unsound practice and contrary to the defendant's right to be tried by his peers to select trial jurors from the pool of grand jurors that indicted the defendant.).

next day.[20] There is no issue properly before this Court concerning the inclusivity of the Telfair County master jury list, which contained more than 8,500 names. There is no issue concerning the randomness of the selection from that master jury list of 20 of the 22 members of the grand jury that indicted Towns. There is no issue concerning the randomness of the selection of the 150 people already summoned as trial jurors from which the clerk selected the other two grand jurors, who no one disputes were eligible and competent to serve on the grand jury that indicted Towns.[21] Further, just as the statutes for selecting, drawing, and summoning jurors for the array form no part of our system for procuring an impartial jury, the

---

[20] See OCGA § 15-12-1 (2) ("Choose" or "chosen" means the act of randomly selecting potential jurors from the county master jury list in a manner that does not deliberately or systematically exclude identifiable and distinct groups from the venire."); OCGA § 15-12-120.1 ("On and after July 1, 2012, trial juries shall be chosen from a county master jury list. The presiding judge shall order the clerk to choose the number of jurors necessary to conduct the business of the court. The clerk shall choose the names of persons to serve as trial jurors for the trial of civil and criminal cases in the court. Such trial jurors shall be summoned in the same manner as provided in Code Section 15-12-65.1."); OCGA § 15-12-65.1 (authorizing mailing of juror summons).

[21] See OCGA §§ 15-12-4, 15-12-60, and 15-12-70 concerning the eligibility and qualifications of grand jurors and the impact of ineligibility.

statutes for selecting grand jurors similarly do not require that they

be qualified as to their partiality or bias.[22]

Moreover, the clerk was not acting on her own initiative; rather, she was carrying out the trial judge's order to fill two seats on the grand jury that day. And, there is no evidence in the record

---

[22] As we have explained,

> the basic theory of the functions of the grand jury does not require that grand jurors should be impartial and unbiased. In this respect, their position is entirely different from that of petit jurors. The Sixth Amendment to the Constitution of the United States expressly provides that the trial jury in a criminal case must be "impartial." No such requirement in respect to grand juries is found in the Fifth Amendment, which contains the guaranty against prosecutions for infamous crimes unless on a presentment or indictment of a grand jury. It is hardly necessary to be reminded that each of these Amendments was adopted at the same time as a part of the group consisting of the first ten Amendments. A grand jury does not pass on the guilt or innocence of the defendant, but merely determines whether he should be brought to trial. It is purely an accusatory body. This view can be demonstrated by the fact that a grand jury may undertake an investigation on its own initiative, or at the behest of one of its members. In such event, the grand juror who instigated the proceeding that may result in an indictment, obviously can hardly be deemed to be impartial, but he is not disqualified for that reason.

(Citations and punctuation omitted.) *Brown v. State*, 295 Ga. 240, 241-242 (759 SE2d 489) (2014). See also OCGA § 15-12-74 (a) ("Grand jurors have a duty to examine or make presentments of such offenses as may or shall come to their knowledge or observation after they have been sworn. Additionally, they have the right and power and it is their duty as jurors to make presentments of any violations of the laws which they may know to have been committed at any previous time which are not barred by the statute of limitations.").

contradicting the trial court's finding that the clerk had no nefarious or discriminatory intent in calling these jurors before attempting to reach others on the list of summoned trial jurors. The clerk was a lifelong resident of Telfair County. The selection criterion that she used here — her own educated guesses about who on the randomly generated list of summoned trial jurors was most likely to be able to appear quickly so that a grand jury could be empaneled and get to work[23] — does not call into question the overall representativeness of the resulting grand jury. I see no evidence that her actions showed a disregard of the law, undermined the purposes of OCGA § 15-12-66.1, or compromised the integrity of the grand jury process. Indeed, I believe the clerk substantially complied with the law.[24] Finally, I also find it highly improbable that the clerk's actions in contacting

---

[23] I imagine that any law enforcement officer charged with the task of locating missing grand jurors would have similarly exercised his or her discretion in finding those jurors.

[24] OCGA § 1-3-1 (c) provides that "[a] substantial compliance with any statutory requirement, especially on the part of public officers, shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by law."

T. S. and B. W. before others on the trial jury list affected the grand jury's decision to return an indictment.[25]

Dismissing the indictment based on this irregularity troubles me. Dismissal of an indictment is an extreme sanction, "used only sparingly as [a remedy] for unlawful government conduct." (Citations omitted.) *State v. Lampl*, 296 Ga. 892, 896 (2) (770 SE2d 629) (2015).[26] In fact, recognizing the extreme nature of the remedy, the General Assembly recently provided that, "[i]f an indictment is returned, and a grand juror was ineligible to serve as a grand juror pursuant to subsection (c) of this Code section [concerning a juror's status as a felon or as mentally incompetent], such indictment shall not be quashed solely as a result of such ineligibility." OCGA § 15-12-60 (d). See Ga. L. 2015, p. 693, § 1A-1.

Accordingly, I would reverse the trial court's order quashing

---

[25] See OCGA § 15-12-61 (a) ("A grand jury shall consist of not less than 16 nor more than 23 persons. The votes of at least 12 grand jurors shall be necessary to find a bill of indictment or to make a presentment. . . .").

[26] Given the facts of this case, I am hard pressed to see how quashing this indictment "remedies" anything. Rather, it delays justice and puts the State to additional effort and expense. We should also be mindful of the additional burden placed on jurors when proceedings requiring their service are delayed or repeated.

the indictment. See *Turner v. State*, 78 Ga. 174, 178 (1) (1886) (holding that fact that grand jury had four people over statutory maximum number was "not such an irregularity as would [warrant] quash[ing] an indictment," and describing statutory maximum as merely directory rather than mandatory). See also id. at 179 (1) ("[T]he makers of it [i.e., the statutory maximum] never dreamed that the prisoner should quash a charge against him because the judge drew a few more than thirty [grand jurors] and thus expedited the rotation of service."); *Robinson v. State*, 179 Ga. App. 616, 617 (1) (347 SE2d 667) (1986) (finding no disregard of essential and substantial requirements of statutory scheme where statutory violation did not deprive defendant of fair consideration by grand jury of whether indictment should issue, and noting that "Defendant does not claim that it did, but merely that it happened and was contrary to the statute's directive").

I am authorized to state that Justice Boggs joins in this dissent.

DECIDED OCTOBER 21, 2019 – RECONSIDERATION DENIED NOVEMBER 14, 2019.

Murder. Telfair Superior Court. Before Judge Wall.

*Timothy G. Vaughn, District Attorney, Keely K. Pitts, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*Hogue Hogue Fitzgerald & Griffin, Franklin J. Hogue, James T. Griffin; Gabrielle A. Pittman, Nathaniel L. Studelska*, for appellee.